**UNITED STATES of America, Plaintiff,**

v.

**Ronald Edward MARKOWSKI, Defendant.**

**No. H CR 83–36.**

United States District Court,
N.D. Indiana,
Hammond Division.

March 20, 1984.

R. Lawrence Steel, Jr., U.S. Atty., and Jerome Frese and William T. Grimmer, Asst. U.S. Attys., Hammond, Ind., for plaintiff.

Roy E. Black, Miami, Fla., for defendant.

## ORDER DENYING BAIL

KANNE, District Judge.

The Court has before it the Government's renewed request to deny the defendant, Ronald Markowski, continued release on bond. The lastest request is based on information that (1) while released on the initial bond the defendant engaged in criminal activity dangerous to the community, and, (2) the source of the Two Hundred Thousand Dollars cash deposit in the court's registry used to secure defendant's release from custody on the Two Million Dollar bond came from criminal activity.

The defendant was indicted in this case on July 7, 1983, with a bond recommended by Judge Robert A. Grant of this Court in the sum of Six Million Dollars. The defendant was arrested in the Southern District of Florida on July 22, 1983. In Ft. Lauderdale, Florida, Magistrate Patricia Kyle held removal and lengthy bond hearings and retained the Six Million Dollar bond originally recommended. The following day defendant's counsel filed a motion to reduce bond before Magistrate Kyle and thereafter sought a reduction of bond from U.S. District Judge C. Clyde Atkins in Miami, Florida, who heard argument and referred the matter to Magistrate Herbert Shapiro with direction to reduce the bond. Magistrate Shapiro reduced bond to Two Hundred Fifty Thousand Dollars cash with a ten percent deposit and Two Million unsecured with property pledged by the defendant and his parents. The initial bond was then posted by the defendant in Miami and he was released.

Thereafter, a federal indictment in the Southern District of Florida was returned against the defendant herein and the same bond established by Magistrate Shapiro was adopted as the defendant's bond in the Florida charge.

Based on the circumstances disclosed at a hearing on January 18, 1984, six months after the date of the indictment, this Court by written order found the initial bond, as reduced in the Southern District of Florida, to be insufficient to assure the defendant's attendance at trial. The Court thereupon modified the conditions in accordance with Title 18 U.S.C. § 3146 and set bond at Two Million Dollars, with deposit in the registry of this court the sum of Two Hundred Thousand Dollars in cash. The defendant was taken into custody. Two days later on January 20, 1984, the defendant deposited the Two Hundred Thousand Dollars cash with the registry of the court. A hearing was held on that date regarding the source of the funds and the Court denied the Government's request to reject the security. Thereupon the defendant was released on bond.

As of this date the defendant remains under a federal indictment in the Northern District of Indiana, a federal indictment in the Southern District of Florida, and now a Florida state court indictment returned in March 1984, all involving allegations of continuing international drug smuggling occurring prior to July 1983.

■ In determining the issues presented with regard to the defendant's continued release on bond the Government has the burden of proving its allegations by a preponderance of the evidence. Further, the defendant must be afforded the opportunity to have the Government's witnesses available for cross-examination and the opportunity to present evidence on behalf of the defendant.

The Court's decision on the issue before it is based on evidence submitted in a hearing on one of the Government's prior motions to revoke bond held on January 18, 1984, and the *Nebbia* hearing held on January 20, 1984, as well as the evidence submitted at this hearing with regard to the Government's latest motion for revocation of bond.

Based on a preponderance of the evidence the Court makes the following findings.

During October and November of 1983 while on release under the bond set in Florida Ronald Markowski illegally import-

ed into the United States from Colombia, South America, 864 kilograms of cocaine valued at Twenty Seven Million Dollars in violation of federal law. That after his indictment in this case and prior to depositing with the registry of this court Two Hundred Thousand Dollars cash as security on his modified bond the following circumstances are now disclosed. Mr. Markowski in prior testimony stated that during that period he was unemployed, had no current income and that his assets were in cash received from prior employment as a pilot in the Caribbean. However, testimony now in evidence discloses that during that time Mr. Markowski had access to, dealt with and received extremely large sums of cash relating to a drug smuggling operation. The evidence now further discloses that Mr. Markowski has a Panamanian bank account into which funds derived from the illegal activity were placed. There is credible evidence now to show that the funds deposited as security in this case by Mr. Markowski for his release were derived from defendant's drug smuggling activity.

█ While there are strong constitutional and statutory policies underlying a defendant's right to pretrial bail, that right is not absolute. *U.S. v. Kirk,* 534 F.2d 1262 at 1281 (8th Cir.1976). Continued drug trafficking through a smuggling operation which brings massive amounts of cocaine into the country poses a substantial danger to the public. *See U.S. v. Stanley,* 449 F.Supp. 467 (N.D.Cal.1978), *aff'd,* 601 F.2d 380 (9th Cir.1979). Trafficking in illicit drugs is a matter of pressing national concern. *U.S. v. Zylstra,* 713 F.2d 1332 at 1338 (7th Cir.1983).

The defendant herein, much as the defendant in *U.S. v. Wind,* 527 F.2d 672, 674–75 (6th Cir.1975), argues that pretrial bail cannot be denied on the basis of danger to the public. In the *Wind* case the Court stated as follows:

> The criteria to be used in setting bail is contained in 18 U.S.C. 3146, which states that conditions for release are to be set only if a release on personal recognizance will not reasonably assure the appearance of the defendant in court. [Footnote omitted.]

Wind further argues that 18 U.S.C. § 3146 contains no provision permitting pretrial detention without bail, and that since § 3148, governing pretrial release in capital cases, permits pretrial detention without bond if the person might flee or might pose a danger to the community, the omission of such provision in § 3146 was intended by Congress to preclude custody without bond in non-capital cases.

The legislative history of the Bail Reform Act of 1966 does not support Wind's position. House Report 1541, 1966 U.S.Code Cong. & Admin.News, pp. 2293, 2296, indicates that Congress intended to avoid the question of pretrial detention by the wording of § 3146, not to resolve it:

> This legislation does not deal with the problem of preventive detention of the accused because of the possibility that his liberty might endanger the public, either because of the possibility of the commission of further acts of violence by the accused during the pre-trial period, or because of the fact that he is at large might result in the intimidation of witnesses or the destruction of evidence.... A solution goes beyond the scope of the present proposal and involves many difficult and complex problems which require deep study and analysis. The present problem of reform of existing bail procedures demands an immediate solution. It should not be delayed by consideration of the question of preventive detention. Consequently, this legislation is limited to bail reform only.

Since Congress did not intend to address the problem of pretrial detention without bond in the Bail Reform Act of 1966, the existence of extrastatutory powers to detain persons prior to trial may be considered....

We hold that *in a pretrial bail hearing on a non-capital offense, a judicial officer may consider evidence that the de-*

*fendant ... is a danger to the community in determining whether the defendant should be released pursuant to 18 U.S.C. § 3146.* [Emphasis Added.]

The reasoning in the *Stanley* case previously cited along the same lines is also persuasive.

It is the view of this Court that it has inherent power to consider the issue of whether the conduct of the defendant released on bond poses a danger to the public and the further inherent power to revoke bond on such a finding. The conduct of the defendant in smuggling 864 kilograms of cocaine into the United States while on bond poses a substantial danger to the public and his bond should be permanently revoked and denial of release continued. Because this is a rare case of extreme and unusual circumstances detention without bail is warranted.

The Court would further note that the source of the funds used for defendant's bail appears to have come from a continuing drug smuggling operation. As stated in *U.S. v. Ellis DeMarchena,* 330 F.Supp. 1223, 1226 (S.D.Cal.1971):

> [If] the security comes from an illegitimate source, and is merely a business expense for a dealer in contraband, there is a paucity of moral force compelling a defendant to reappear.

*See also U.S. v. Dussuyer,* 526 F.Supp. 883 (S.D.Fla.1981).

As stated in *U.S. v. Nebbia,* 357 F.2d 303, 304 (2nd Cir.1966):

> If the court lacks confidence in the surety's purpose ... to secure the appearance of a bailed defendant, it may refuse its approval of a bond even though the financial standing of the bail is beyond question.

However, because the Court intends to revoke defendant's bond it need not take action under the *Nebbia* provisions. In addition, for the same reason, the Court has found it unnecessary to address the Government's additional and alternative request for modification of conditions of bond.

IT IS THEREFORE ORDERED that bond is permanently revoked and the release of the defendant is DENIED.