**UNITED STATES of America, Plaintiff,**

v.

**Antonio DOMINGUEZ and Roberto Rodriguez, Defendants.**

**No. HCR 85–27(8).**

United States District Court, N.D. Indiana, Hammond Division.

March 17, 1986.

---

Gregory A. Vega, Asst. U.S. Atty., Hammond, Ind., for plaintiff.

Mark Krasnow, Miami, Fla., for defendant Antonio Dominguez.

Antonio J. Curiel, Chicago, Ill., for defendant Roberto Rodriguez.

## ORDER OF DETENTION

KANNE, District Judge.

This matter involves the Bail Reform Act of 1984, specifically the issue of pretrial detention based on danger to the community under 18 U.S.C. § 3142.

Following an appeal of the magistrate's pretrial detention order, this court found that the defendants, Antonio Dominguez and Roberto Rodriguez, were charged with drug trafficking offenses and that a rebuttable presumption arose, pursuant to 18 U.S.C. § 3142(e) of the Bail Reform Act, that no condition or conditions of release could reasonably assure the safety of the community. This court then found the defendants had failed to come forward with any evidence to rebut the statutory presumption of dangerousness contained in § 3142(e). Accordingly, because the statutory presumption of danger to the community had not been rebutted on November 5, 1985, this court ordered defendants detained pending trial.

Defendants appealed and, in a decision issued on February 13, 1986, the Seventh Circuit Court of Appeals vacated this court's finding of dangerousness, holding that a conclusive presumption of dangerousness based solely on 18 U.S.C. § 3142(e), was improper. In their review, the Court of Appeals found that the statutory presumption of dangerousness had been preliminarily rebutted. The matter was then remanded to this court for further findings. *United States v. Dominguez, et al,* 783 F.2d 702 (7th Cir.1986).[1]

In focusing on the issue of whether defendants pose sufficient danger to the community to require pretrial detention, it is essential that this court adhere to the guidance given us and, in doing so, that we more closely review the intent of the Bail Reform Act of 1984, the statutory scheme which controls pretrial detentions. The Bail Reform Act of 1984 substantially revised the Bail Reform Act of 1966 in that risk of flight is no longer the sole consideration in bail proceedings. In referring to the changes made by the 1984 Act, the Senate Report stated:

> The adoption of these changes marks a significant departure from the basic philosophy of the Bail Reform Act [of 1966],

which is that the sole purpose of bail laws must be to assure the appearance of the defendant at judicial proceedings. S.Rep. No. 98-225, 98th Cong., 1st Sess. at 3-4, *reprinted in* U.S.Code Cong. & Admin.News 3182, 3185-86. It was the intent of Congress to address such problems as:

> [T]he need to permit the pretrial detention of defendants as to whom no conditions of release will assure their appearance at trial *or assure the safety of the community or of other persons* (emphasis added).

*Id.* at 3185. The Senate Report went on to indicate that:

> Many of the changes in the Bail Reform Act incorporated in this bill reflect the Committee's determination that Federal bail laws must address the alarming problem of crimes committed by persons on release and must give the courts adequate authority to make release decisions that give appropriate recognition to the danger a person may pose to others if released.

*Id.*

It is apparent, from many criminal proceedings before the court since the Bail Reform Act of 1984 went into effect, that the addition of "danger to the community and to others" as an aspect of bail law is a wrenching concept. It comes as a surprise to many that the philosophy that "the sole purpose of bail is to ensure the appearance of the defendant at trial" is no longer true. The Senate Report clearly points out that the congressional intent is to make the dangerousness of a defendant a matter of concern in release decisions equal to that of risk of flight, by stating that:

> [D]anger to the community is as valid a consideration in the pretrial release decision as is the presently permitted consideration of risk of flight. Thus, ... section 3142, places the consideration of defendant dangerousness on an equal footing with the consideration of appearance.

---

1. Co-defendant Leonel Portes, among others, was also ordered held without bail. The Seventh Circuit Court of Appeals affirmed the Portes pretrial detention order. *United States v. Portes,* 786 F.2d 758 (7th Cir.1986).

S.Rep. 225, *supra*, at p. 13, 1984 U.S.Code Cong. & Admin.News p. 3195.

It is also important to note that there is a distinction between danger to another person and danger to the community. This distinction is addressed in the Senate Report as follows:

The concept of defendant dangerousness is described throughout this chapter by the term 'safety of any other person or the community.' The reference to safety of any other person is intended to cover the situation in which the safety of a particular identifiable individual, perhaps a victim or witness, is of concern, while the language referring to the safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community.

*Id.*

■ Having briefly reviewed the legislative intent regarding the concept of dangerousness, this court turns now to the factors which must be considered in making a determination regarding pretrial release or detention. As instructed by the Congress this court "is expected to weigh all the factors in the case before making its decision as to risk of flight and danger to the community." *Id.* at 3207–3208.

Once a defendant is indicted, the government may move to have him detained pending trial pursuant to 18 U.S.C. § 3142(f)(1) or (2). Upon motion by the government or upon his own motion, "the judicial officer shall hold a hearing to determine whether any condition or combination of conditions set forth in [18 U.S.C. § 3142(c)] will reasonably assure the appearance of the person as required and the safety of any other person and the community ...." 18 U.C.S. § 3142(f).

In making his determination regarding pretrial release, a judicial officer is directed, under 18 U.S.C. § 3142(g), to "take into account the available information concerning":

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including—

(A) his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, he was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

The nature and circumstances of the offense and the characteristics of the offender, which will support the required finding for pretrial detention under § 3142(g), will vary considerably in each case. As the legislative history states, Congress has, for the most part, refrained from specifying what kinds of information are a sufficient basis for the denial of release, and has chosen to leave the resolution of this question to the sound judgment of the courts acting on a case-by-case basis. However, the Bail Reform Act does describe two sets of circumstances "under which a strong probability arises that no form of conditional release will be adequate." S.Rep. 225, *supra*, at 19, 1984 U.S.Code Cong. & Admin.News p. 3202. One of those circumstances is in cases in which the defendant is charged with certain offenses involving trafficking in narcotic drugs. The Senate Report specifically noted:

It is well known that drug trafficking is carried on to an unusual degree by persons engaged in continuing patterns of criminal activity. Persons charged with major drug felonies are often in the busi-

ness of importing or distributing dangerous drugs, and thus, because of the nature of the criminal activity with which they are charged, they pose a significant risk of pretrial recidivism.

*Id.* at p. 3203.

■ It is the clear intent of Congress that the courts are required to give some of the factors in § 3142(g) greater weight in determining whether pretrial detention is appropriate. Specifically, in considering certain of the factors in subsection (1) of 3142(g), a judicial officer is required to preliminarily presume that where a defendant is charged with certain drug offenses, no condition or combination of conditions will assure the safety of any individual or the community at large. Thus, in weighing the factor in § 3142(g)(1) which concerns "whether the offense ... involves a narcotic drug", the presumption provided in § 3142(e) comes into play and must be applied. The pertinent provision of § 3142(e) states that:

> Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act....

Although § 3142(e) provides that the rebuttable presumption will arise where there is probable cause to believe that defendant committed certain offenses, the Seventh Circuit Court of Appeals has stated that the statutory presumption contained in 18 U.S.C. § 3142(e) may be triggered solely by an indictment charging certain crimes, including crimes punishable by imprisonment of 10 years or more under the Controlled Substances Act. (21 U.S.C. § 801, *et seq.*) *United States v. Dominguez,* 783 F.2d 702, 706, n. 7 (7th Cir.1986) *citing United States v. Hurtado,* 779 F.2d 1467, 1477–79 (11th Cir.1985); *United*

*States v. Contreras,* 776 F.2d 51, 54 (2d Cir.1985).

■ Where as here, defendants are charged with: a conspiracy to distribute cocaine; possession of cocaine with intent to distribute; and using telephone communications to facilitate the commission of a felony, to-wit: distribution of cocaine, (in violation of 846, 841(a)(2) and 843, respectively), the very crimes with which defendants are charged are a weighted factor which triggers a presumption that no combination of conditions will assure the safety of the community; or, in other words that defendants will pose a continuing danger to the community if released on bail.

Legislative history makes clear why the statutory presumption found in § 3142(e) may be triggered solely by an indictment charging defendants with offenses under the Controlled Substances Act.

> The drug offenses [triggering the statutory presumption] involve either trafficking in opiates or narcotic drugs, or trafficking in large amounts of other types of controlled substances. It is well known that drug trafficking is carried on to an unusual degree by persons engaged in continuing patterns of criminal activity. Persons charged with major drug felonies are often in the business of importing or distributing dangerous drugs, and thus, because of the nature of the criminal activity with which they are charged, they pose a *significant risk of pretrial recidivism....* Because of the extremely lucrative nature of drug trafficking, and the fact that drug traffickers often have established substantial ties outside the United States from whence most dangerous drugs are imported into the country, these persons have both the resources and the foreign contacts to escape to other countries .... In view of these factors, the committee has provided in § 3142(e) that in a case in which there is probable cause to believe that the person has committed a grave drug offense, a rebuttable presumption arises that no condition or combination of conditions will reasonably assure the ap-

pearance of the person and the safety of the community.

S.Rep. 225, *supra* at p. 19, 1984 U.S.Code Cong. & Admin.News p. 3202.

In United States v. Portes, an appeal brought by a co-defendant in this case, the Seventh Circuit Court of Appeals stated "In creating this presumption, Congress determined that the type of drug trafficking alleged in this indictment is a serious danger to the community. Especially, significant is the drug networks' ability to continue to function while a defendant awaits trial." 786 F.2d 758, 765 (7th Cir.1986) *citing* S.Rep. No. 225, 98th Cong. 2d Sess. 12, reprinted in 1984 U.S.Code Cong. & Admin.News pp. 3182, 3195–96.

As stated earlier, it is evident that one of the factors set forth in subsection (1) of § 3142(g), the fact that the offense involves a narcotic drug, is strongly weighted in favor of requiring pretrial detention in light of the presumption contained in § 3142(e). However, this weighted factor, or presumption, is subject to rebuttal.

In *United States v. Jessup*, 757 F.2d 378 (1st Cir.1985), upon which the Seventh Circuit Court of Appeals relied in both *United States v. Diaz*, 777 F.2d 1236 (7th Cir.1985) (upholding district court's order of detention) and *United States v. Dominguez, et al.*, 783 F.2d 702 (7th Cir.1986) (vacating district court's order of detention and requiring additional findings); the First Circuit Court of Appeals held defendant's burden when § 3142(e) is applied, is one of production, not persuasion. *Accord United States v. Portes*, 786 F.2d 758, 764 (7th Cir.1986).

The *Jessup* Court in turn, relied on the Senate Judiciary Committee Report, in concluding that the burden is on the defendant to "establish a basis for concluding that there are conditions of release sufficient to assure that he will not again engage in dangerous criminal activity pending his trial." *Id.* at 381, *quoting* S.Rep. No. 225, 98th Cong. 1 Sess. 19 (1983), reprinted in 1984 U.S.Code Cong. & Admin.News pp.

3182, 3202 *see United States v. Volksen*, 766 F.2d 190 (5th Cir.1985).

The *Jessup* Court then went on to hold that once a defendant comes forward with some evidence, the statutory presumption is rebutted but does not necessarily disappear. "[T]he judge should ... still keep in mind the fact that Congress has found that offenders, as a general rule, pose special risks of flight [or dangerousness] ... and incorporate that fact among other special factors that Congress has told him to weigh when making his bail decision." *Id.* at 384. *United States v. Portes*, 786 F.2d 758 (7th Cir.1986), *United States v. Martir*, 782 F.2d 1141 (2nd Cir.1986), *United States v. Diaz*, 777 F.2d at 1238.

■ Therefore, where a defendant comes forward with evidence and rebuts the presumption of dangerousness, the fact that the "offense ... involves a narcotic drug" may no longer give rise to the conclusion that no condition or combination of conditions can assure the safety of the community. The fact that "the offense ... involves a narcotic drug" becomes just another factor, among those the court must consider in determining whether pretrial detention is appropriate under 18 U.S.C. § 3142(g).

Turning now to the case at bar, in its November 5, 1985 order this court found that the offenses with which defendants Dominguez and Rodriguez were charged involved narcotic drugs and thus triggered the presumption that no condition or combination of conditions could assure the safety of the community. This court also found that defendants had failed to come forward with any relevant evidence tending to rebut the presumption that their release posed a danger to the community. Therefore, conclusively applying the statutory presumption mandated by § 3142(e) of the Bail Reform Act, this court ordered defendants detained without further consideration of any remaining factors contained in § 3142(g).

It is clear from the foregoing analysis of legislative intent, that this court's failure to consider defendants' evidence as relevant to other factors contained in § 3142(g) constituted error, and we are so instructed on remand. As the Court of Appeals observed, this court's prior finding of dangerousness "was based solely on the application of the presumption in § 3142(e)." *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir.1986). There were "no other findings on the issue of dangerousness." *Id.* at 706.

Based on the limited findings this court provided,[2] the Court of Appeals went on to make the following determination. Where the *sole* factor that a judicial officer considers under 18 U.S.C. § 3142(g) is that an indictment has been filed charging a defendant with drug trafficking, the presumption which attaches to that factor by the application of § 3142(e) may be rebutted when a defendant comes forward with some evidence that he will not be a danger to the community—even if that evidence is merely related to family and community ties. *Id.* at 707.

Therefore, evidence of economic and social stability coupled with the absence of any relevant criminal record was sufficient to meet the presumption of dangerousness based on the sole factor that a drug trafficking indictment has been filed.

If, on the other hand, this court had considered and made findings with regard to all the factors in § 3142(g)—as the court has now done in this order—it would have been apparent that the evidence of economic and social stability and absence of a criminal record [§ 3142(g)(3)(A)] are clearly outweighed by the nature and circumstances of the offense [§ 3142(g)(1)] even where the presumption, triggered by the mere filing of an indictment charging a drug trafficking offense, had been rebutted.

On remand, the pretrial detention hearing for defendants Dominguez and Rodri-

guez was reopened for submission of additional evidence on March 5, 1986. As required, we have now determined, upon consideration of all the factors outlined in § 3142(g), whether the government has shown, by clear and convincing evidence, that Dominguez and Rodriguez would pose such a danger to any person or the community that no set of conditions could assure the safety of the community.

> The concept of defendant dangerousness is described throughout this chapter by the term 'safety of any other person or the community.' The reference to safety of any other person is intended to cover the situation in which the safety of a particular identifiable individual, perhaps a victim or *witness,* is of concern, while the language referring to the safety of the community *refers to the danger the defendant might engage in criminal activity to the detriment of the community.* The Committee intends that the concern about safety be given *a broader construction than merely danger of harm involving physical violence ....* The Committee *also emphasizes that the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the* 'safety of any other person or the community.' (Emphasis added.)

1984 U.S.Cong. Code & Admin.News, pp. 3195–6. *United States v. Portes*, 786 F.2d 758, 765 (7th Cir.1986). *See also, United States v. Hawkins*, 617 F.2d 59 (5th Cir. 1980), *cert. denied*, 449 U.S. 952, 101 S.Ct. 355, 66 L.Ed.2d 215; *United States v. Markowski*, 582 F.Supp. 1276 (N.D.Ind.1984).

As stated previously, in determining whether there are conditions of release that will reasonably assure the safety of any other person and the community, the court must take into consideration, not only that a particular type of indictment has been filed, but also, all available information concerning the circumstances of the

---

**2.** Because this court conclusively applied the presumption in § 3142(e), based on the sole factor that a drug trafficking indictment had been filed, there were few evidentiary findings relating to other factors outlined in § 3142(g).

offense charged; the weight of the evidence against the person; the history and characteristics of the person such as his family ties, employment history, financial resources, community ties, past conduct, criminal history; and the nature and seriousness of the danger to any person or that community that would be posed by the person's release. 18 U.S.C. § 3142(g).

A brief synopsis of the facts adduced at all the hearings discloses the following. That the defendants, Antonio Dominguez and Roberto Rodriguez, along with 30 other defendants, including members of the Zambrana family, are charged with participating in an ongoing conspiracy to distribute large quantities of cocaine. The general scheme to distribute drugs involved the use of various automobiles to transport cocaine from Miami, Florida, to northwest Indiana. The automobiles used in this activity were equipped with "secret compartments" which were cut into a space in the right rear wheelwell of the car. During a northbound trip on April 25, 1985, a cocaine shipment was intercepted by law enforcement officers in Indiana. The cocaine, found in the "secret compartment", weighed six kilograms, was 92% pure, and had an approximate value of two million dollars. Defendant Dominguez is purportedly the Miami supplier of the cocaine for this conspiracy. He is a Cuban national residing in Miami and is employed as a welder. Defendant Rodriguez purportedly assists in supplying the cocaine and acts as one of the couriers, shuttling vehicles and cocaine between Miami and northwest Indiana. He is a Cuban national living in Miami and is employed as an autobody repairman. Both defendants continued drug related activities after DEA agents seized the cocaine shipment on April 25, 1985.

Having summarized the prearrest facts, the court now makes its findings as to the specific information which has been produced at the various hearings conducted in this case. The government has presented evidence by special agents for the Drug Enforcement Administration (DEA), with regard to the following events. Through court authorized electronically intercepted telephone calls, DEA learned of a drug trafficking operation between Miami, Florida, and Gary, Indiana. The government asserts that defendants Dominguez and Rodriguez were suppliers of a very high quality cocaine. (Tr. 10–29–85 p. 17.) Dominguez was purportedly the source of supply of cocaine for the Zambrana organization while Rodriguez delivered narcotics from Miami to the Zambranas in Gary, Indiana. (Tr. 8–29–85 p. 19.) Rodriguez also had a telephone number at his residence which was used as the Miami communications link.

Between April 14 and June 25, 1985, there were approximately 49 telephone calls made between the Rodriguez residence at 10150 Southwest 56th Street in Miami, Florida, and the Zambrana residence in Gary, Indiana. (Tr. 8–2–85 p. 4; Tr. 8–29–85 p. 26.) Following phone calls concerning delivery of narcotics from Miami to Gary, Indiana, defendant Rodriguez would arrive in Hammond or Gary, Indiana, where he would take vehicles to various locations. The vehicles were then unloaded and returned to Rodriguez. (Tr. 8–29–85 pp. 27–28.)

Shortly prior to April 25, 1985, a number of intercepted telephone conversations between defendant Dominguez and co-defendants of the Zambrana family revealed information concerning preparations for a trip from Gary, Indiana, to Miami; the couriers who would be picking up the narcotics; and, the quality and quantity of the narcotics. (Tr. 8–29–85 p. 24.) On April 25, 1985, a late model Oldsmobile Delta 88 traveling north on Interstate 65 in Indiana was stopped by law enforcement officers. The vehicle's driver did not have a valid license. The vehicle was taken into custody and thereafter a federal search warrant was obtained for the automobile and a search was conducted by DEA agents. (Tr. 8–29–85 pp. 19–20.) The search uncovered approximately six kilograms of cocaine contained in a secret compartment in the right wheelwell of the automobile. (Tr. 8–29–85 pp. 20–21.)

The six kilograms of cocaine seized from the secret compartment was 92% pure and had a value of approximately two million dollars. (Tr. 8–29–85 p. 21; Tr. 3–5–86 p. 70.) Based on the purity of the cocaine, it had not been "cut" and was "close to the importer" of the cocaine. (Tr. 8–29–85 p. 22.)

After law enforcement officers seized the narcotics in Indiana on April 25, 1985, the DEA intercepted further telephone communications between the Zambranas and Dominguez which concerned how the loss of the vehicle occurred, why police had seized the vehicle, and how to get the vehicle back. (Tr. 8–29–85 p. 25.) These telephone calls were also made from a number in Miami, subscribed to by Rodriguez, to a telephone located at a Zambrana residence in Gary, Indiana. (Tr. 8–29–85 p. 26.) It also appears that Dominguez did, at one time, intend to send someone to Indiana in order to obtain the cocaine from the car which was impounded on April 25, 1985. (Tr. 3–5–86 p. 54.)

On May 14 and 15, 1985, less than a month after the cocaine was seized on Interstate 65, DEA Agent Trifon Magrames observed defendant Rodriguez in the vicinity of the Holiday Inn on Cline Avenue in Hammond, Indiana. Rodriguez was a passenger in a white Monte Carlo automobile being driven by co-defendant Jay Zambrana. (Tr. 3–5–86 pp. 5–8.) On May 15th Rodriguez and Jay Zambrana drove to the home of co-defendant Andre Sanchez, where the Zambranas stored their narcotics. (Tr. 3–5–86 p. 71.) Shortly thereafter, Jay Zambrana, driving in a White Monte Carlo, left the Sanchez residence followed by Rodriguez who was driving a green Monte Carlo automobile. Jay Zambrana then drove to a residence owned by Jesus Zambrana, Sr., at 465 Wheeler Street, Gary, Indiana, and Rodriguez continued southbound out of Gary, Indiana, on Interstate 65. (Tr. 3–5–86 pp. 10–12.)

Again on June 27, 1985, Rodriguez was observed in the parking lot of Denny's Restaurant on Cline Avenue in Hammond, Indiana. On that date he traveled to the Zam-brana residence in Gary and the O'Hare Oasis in Chicago, Illinois. (Tr. 3–5–86 p. 55.)

The indictment in this case was returned on July 19, 1985, and unsealed on July 23, 1985, when the arrest of all defendants began. Both defendants Dominguez and Rodriguez were arrested at 10150 Southwest 56th Street in Miami, Florida, the Rodriguez residence. (Tr. 8–2–85 p. 6.)

On July 23 a search was conducted of the Zambrana residence located at 6217 West 6th Street in Gary, Indiana. Among other things at the 6th Street location, DEA agents found and searched a black Monte Carlo automobile. (Tr. 3–5–86 pp. 15–18, 43.) The automobile had no license plates and was found to have a secret compartment of comparable size and in the same location as the Oldsmobile which contained the drugs seized on April 25, 1985. (Tr. 3–5–86 p. 54.) The black Monte Carlo was registered to Juana Dominguez, wife of defendant Dominguez. The vehicle had been reported stolen in Miami two days earlier. (Tr. 3–5–86 pp. 16–17.) On the same date DEA agents also executed a search warrant at the Zambrana residence at 465 Wheeler Street in Gary, Indiana, and seized blank vehicle titles and blank VIN (Vehicle Identification Number) tags. (Tr. 3–5–86 p. 40.) Agent Magrames testified that based on his experience in law enforcement, the blank titles and VIN tags can be used for the purpose of falsifying vehicle titles. (Tr. 3–5–86 p. 40.) In addition Agent Magrames also testified that the secret compartments, of the nature found in both the Delta 88 Oldsmobile seized on April 25, 1985, and the black Monte Carlo seized on July 23, 1985, are used for transporting narcotics or money. (Tr. 3–5–86 pp. 18–19.)

Defendants' counsel, by proffer, have provided the following information. Dominguez is a 36 year old Cuban national who has resided in the United States in Miami since 1979. Dominguez has been married for several years. (Tr. 10–29–85 p. 12.) Other Dominguez family members live in Florida and Nevada. Dominguez is a self-

employed welder. (Tr. 10–29–85 pp. 12–13.) Rodriguez is a 43 year old Cuban national who has resided in the United States since 1980. Rodriguez has worked as an autobody repairman since shortly after arriving in the United States. The earnings from his employment were approximately twelve to fourteen thousand dollars a year. Rodriguez has no criminal record in the United States. (Tr. 10–29–85 pp. 4, 9.)

The foregoing findings of fact are made with regard to all available information relating to a period up to the time of the arrest of the defendants and now present substantial evidence bearing on the factors set forth in subsections (1), (2), (3) and (4) of § 3142(g).

As discussed earlier, we have been instructed that the presumption of dangerousness, which arises from the sole fact that a drug trafficking indictment has been filed in this case, is preliminarily rebutted by evidence of economic and social stability coupled with an absence of any relevant criminal record. Once the presumption in § 3142(e) has been preliminarily rebutted, we must treat the fact that a drug trafficking indictment has been filed and evidence of the defendants' community and family ties as information to be considered along with all other factors under § 3142(g). *United States v. Dominguez*, 783 F.2d 702 (7th Cir.1986); *accord United States v. Portes*, 786 F.2d 758 (7th Cir.1986); *United States v. Jessup*, 757 F.2d 378 (1st Cir.1985).

The factors relating to each of the subsections of § 3142(g) will thus be reviewed in turn.

█ By far the great majority of the available information, now considered, concerns the factors set forth in § 3142(g)(1). In addition to the bare fact that the indictment in this case charges the defendants with drug offenses, credible information has been presented concerning circumstances of the charged offenses. It is with regard to the circumstances of the offenses that a judicial officer must be careful, in drug offenses, to discriminate between isolated or street level transactions and major drug distribution schemes. The level of the danger to the community increases proportionately with the increase in the sophistication, nature, size, and extent of the drug operation. Experience has taught us that major drug operations are not deterred by occasional, albeit serious, setbacks. *See e.g., United States v. Markowski*, 582 F.Supp. 1276 (N.D.Ind.1984) (defendant imported 846 kilograms of cocaine while released on two million dollar bond). The case before this court involves a 61-count indictment charging 32 defendants with drug trafficking offenses. Moreover, in addition to the fact that the indictment filed concerns drug offenses, the evidence now discloses that the defendants were involved in a sophisticated and extended drug distribution scheme. The quality and quantity of the drugs involved indicates a well financed operation, where the loss of cocaine, valued at two million dollars, apparently did not interrupt the distribution scheme. The purity and amount of the cocaine seized indicates that the defendants were involved in the "wholesale" level of the distribution of drugs. Clearly the information relating to the circumstances of the offenses charged shows a very serious threat to the community.

The weight of the evidence against the defendants under § 3142(g)(2) also appears to be substantial. Intercepted telephone communications, eyewitness observations and extensive circumstantial evidence forms a basis by which it can be concluded that Dominguez and Rodriguez played a pivotal role in the drug distribution scheme set forth in the indictment.

Some limited information regarding the history and characteristics of the defendants under § 3142(g)(3)(A) has been proffered by their counsel. The factors of economic and social stability together with the absence of any relevant criminal record must now be viewed, not as rebuttal to a presumption raised solely by the filing of a

drug trafficking indictment, but as information to be weighed against all the factors of § 3142(g), not considered previously. In the absence of information regarding the circumstances surrounding a particular drug charge, positive factors concerning community, business and family ties at least suggest that a defendant would be less likely to engage in criminal activity on pretrial release. However, that suggestion is greatly diminished, if not eliminated, where the circumstances of the drug charge are made known and disclose a sophisticated scheme of extended distribution of large quantities of high quality cocaine in which a defendant plays a substantial role. As the legislative history of the Bail Reform Act of 1984 states: "with respect to the factor of community ties, [the Committee] is aware of the growing evidence that the presence of this factor ... has no correlation with the question of safety to the community." 1984 U.S.Code Cong. & Admin.News, p. 3207. Experience with drug cases over the years, indicates that when the offenders are involved with more than isolated street level transactions their business, family and community ties have little effect on inhibiting continued criminal activity while on pretrial release. *See United States v. Markowski, supra.* The fact is that business activity and family members may often be used as a part of a drug distribution scheme.[3] *See e.g., United States v. Markowski,* 772 F.2d 358 (7th Cir.1985). The types of employment of Dominguez and Rodriguez must, therefore, be examined more closely in light of the circumstances in this case. The *modus operandi* for transporting drugs involved the use of a secret compartment cut into the wheelwell of automobiles. The fact that Dominguez is a welder and Rodriguez a body repairman are factors which have an additional significance beyond merely showing regular employment. Moreover, in the area of family ties, one of the cars with a secret compartment was registered to defendant Dominguez's wife. It ap-

pears to be more than coincidence that Mrs. Dominguez's automobile was found at a Zambrana residence in Indiana—two days after it was purportedly stolen. (Particularly in light of the fact that telephone surveillance revealed that Dominguez had been in frequent contact with the Zambranas.)

Finally, the evidence of activities after April 25, 1985, indicates that neither defendant Dominguez or Rodriguez were deterred by the seizure of six kilograms of cocaine by DEA agents. Under § 3142(g)(4) the nature of the danger to the community, posed by the release of Dominguez and Rodriguez, relates to the potentially continuing source for infusion of drugs into the community. There is no doubt, as confirmed by the legislative history of the Bail Reform Act of 1984, that drug trafficking has been determined to pose a real and substantial danger to the community.

The judicial officer reviewing the factors in § 3142(g) must be neutral, but he should not be naive. Although set forth earlier, the comments contained in the Senate Report bear repeating here:

> It is well known that drug trafficking is carried on to an unusual degree by persons engaged in continuing patterns of criminal activity. Persons charged with major drug felonies are often in the business of importing or distributing dangerous drugs, and thus, because of the nature of the criminal activity with which they are charged, they pose a significant risk of pretrial recidivism.

S.Rep. 225, *supra,* at 20, 1984 U.S.Code Cong. & Admin.News, p. 3203.

The court now finds that the government has established, by clear and convincing evidence, that both Dominguez and Rodriguez pose a threat to the community and that no set of conditions can assure that they will not engage in drug trafficking if released on bail.

---

3. The Zambrana co-defendants include the father, mother, sons and daughters.

The court will now examine matters which occurred after the arrest of the defendants. The findings as to the postarrest period are as follows. Andre Sanchez is a 63 year old Gary resident whose role in the drug trafficking organization was to store narcotics at his residence. (Tr. 3–5–86 p. 71.) Sanchez entered a guilty plea in this matter on November 6, 1985. As part of his plea agreement, Sanchez agreed to cooperate and testify against his co-defendants. (Tr. 3–5–86 p. 45.) Sanchez did in fact testify against both Jesse and Jay Zambrana, who were subsequently convicted and sentenced to 40 and 35 years imprisonment, respectively.

On November 3, 1985, the residence of Andre Sanchez was "shot-up" by the apparent use of 38 caliber and 45 caliber weapons. (Tr. 3–5–86 p. 46.) On November 5, 1985, Andre Sanchez received a collect phone call from a telephone located on the twenty-third floor of the Metropolitan Correctional Center in Chicago from a person identifying himself as Carlos. The caller stated that Sanchez had better not testify against a remaining defendant. Defendants Dominguez and Rodriguez were, at that time, housed on the thirteenth floor of the Metropolitan Correctional Center. There is no evidence that Dominguez or Rodriguez were ever on the twenty-third floor of the Metropolitan Correctional Center. (Tr. 3–5–86 pp. 48, 72, 74.)

On February 27, 1986, co-defendant Jay Zambrana indicated to DEA Agent Ava Cooper that defendant Dominguez had hired a hit man to kill Andre Sanchez if he testified against him. (Tr. 3–5–86 pp. 52–53.)

As it pertains to defendants Dominguez and Rodriguez, the evidence that Andre Sanchez's life was threatened by an unidentified caller and that his house was "shot-up", must be discounted since there is no evidence that either of these incidents can be directly attributed to these defendants.

However, the fact that defendant Dominguez threatened to hire a "hit man" to kill Sanchez is sufficient to show that Sanchez's life has been endangered.[4]

The court therefore finds that in addition to presenting a danger to the community, defendant Dominguez presents a danger to an individual, Andre Sanchez. The court also finds that no set of conditions, listed in 18 U.S.C. § 3142(c), can insure the safety of Sanchez in light of the evidence that Dominguez would not harm Sanchez himself but would hire a hitman to do so.

■ Summarizing briefly, the court finds, by clear and convincing evidence, that defendants Dominguez and Rodriguez are a continuing threat to the community in light of their roles in this drug distribution operation and in light of the evidence that defendants can and will potentially engage in drug trafficking while out on bail. The court also finds that defendant Dominguez is a threat to a potential witness in this case. The court finds that no condition or combination of conditions, set forth in 18 U.S.C. § 3142(c), can assure either the safety of the individual in jeopardy or the community.

IT IS THEREFORE ORDERED that the government's Motion for Detention Pending Trial is GRANTED and defendants Dominguez and Rodriguez are ordered DETAINED without bail, pending trial pursuant to 18 U.S.C. § 3142.

---

4. The government offered Sanchez the opportunity to enter the Federal Witness Protection Program. Sanchez refused however, choosing to remain with his children. (Tr. 3–5–86 p. 64.)