UNITED STATES of America, Plaintiff,

v.

Ronald W. BENNETT, Mark C. Wagner, Michael E. Hodges, John Richard Schmidt, Michael A. Depper, and John A. Hudson, Defendants.

No. 89–30045.

United States District Court,
S.D. Illinois.

March 5, 1990.

Ralph M. Friederich, Ass't U.S. Atty., East St. Louis, Ill., for U.S.

Charles Stegmeyer, Stegmeyer & Stegmeyer, Belleville, Ill., for Ronald W. Bennett.

Dale F. Myers, St. Louis, Mo., for Mark C. Wagner.

Paul M. Storment, Jr., Storment & Read, Belleville, Ill., for Michael E. Hodges.

Gage Sherwood, Granite City, Ill., for John Richard Schmidt.

James J. Gomric, Belleville, Ill., for Michael A. Depper.

Phillip A. Kavanaugh, Johnston & Kavanaugh, Scott Air Force Base, Ill., for John A. Hudson.

MEMORANDUM AND ORDER

STIEHL, District Judge:

This matter is before the Court on defendant Mark C. Wagner's Motion to be Admitted to Bail. The defendant was ordered detained by United States Magistrate Gerald B. Cohn on January 8, 1990. In his January 8th order, the magistrate found that probable cause triggered a rebuttable presumption for detention under 18 U.S.C. sec. 3142(e), and that the defendant had failed to rebut the presumption. The magistrate further found that no condition or combination of conditions existed that would reasonably assure the appearance of

the defendant as required and the safety of any other person and the community.

The Court held a de novo hearing on March 1, 1990, and took the matter under advisement. The defendant is charged in a multi-count indictment with conspiracy to distribute in excess of 5 kilograms of cocaine, a Schedule II Narcotic Controlled Substance, in violation of 21 U.S.C. sec. 841(a)(1) and 846, and distribution of cocaine, in violation of 28 U.S.C. sec. 841(a)(1).

18 U.S.C. sec. 3142(e) provides, in pertinent part:

> (e) Detention.—If, after a hearing pursuant to the provisions of subsection (f) of this section, the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial....
>
>     . . . .
>
> Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), section 1 of the Act of September 15, 1980 (21 U.S.C. 955a), or an offense under section 924(c) of title 18 of the United States Code.

18 U.S.C. sec. 3142(e).

## FINDINGS OF FACT

The Court takes judicial notice of the indictment and the transcript of the detention hearing before the magistrate. At the de novo hearing, the government offered sufficient evidence to establish probable cause that the defendant has committed an offense in violation of the Controlled Substances Act. If convicted on all counts as charged, the defendant, who is 31 years old, faces a mandatory minimum sentence of ten years without parole and a maximum sentence of life without parole.

Evidence was adduced at the hearing that the defendant was arrested on January 4, 1990. At the de novo hearing, the Court heard the testimony of Special Agent Edward Delmore, a Metropolitan Enforcement Group (MEG) Unit undercover narcotics agent. Special Agent Delmore testified that while acting in his undercover role, he purchased various amounts of cocaine from the defendant on at least four (4) occasions. The government introduced an October 17, 1989 tape recorded conversation between Agent Delmore and the defendant in which the defendant stated that he had sold eight kilos of cocaine between January and October of 1989.

In addition, Agent Delmore testified that Wagner resisted arrest and that the assistance of an additional officer was needed to effect the handcuffing of the defendant. While having his handcuffs loosened before being placed in the police car, the defendant attempted to flee from the officers. After being successfully secured in the police car, the defendant threatened Agent Delmore. Specifically, the defendant told agent Delmore "I'm going to get you; you're dead." Agent Delmore testified that he took this threat seriously.

A later search of the defendant's residence resulted in the seizure of several packets of cocaine; two semi-automatic weapons, one of which was loaded; an electronic portable scale; drug paraphenalia, including two cocaine smoking pipes; and, a portable police scanner.

The defendant has six to seven prior misdemeanor convictions, including a drug related, cannabis, conviction.

The defendant offered evidence as to his risk of flight, community ties and social stability. The defendant was born in Cahokia and has resided there throughout his life. He has maintained a residence in Cahokia with his ex-wife, Donna Pearman, and their son.

The defendant offered evidence that he made every court appearance required on his prior misdemeanor charges. By proffer, the defendant offered further evidence that he has been a cooperative prisoner while detained at the St. Clair County Jail.

The defendant has submitted eight form affidavits from various friends in support of his motion for pre-trial release. On examination by the government, one of defendant's affiants, Darryl Malvin, testified that he was unaware of the requirements under the law for admission to bail, although that statement was a part of his affidavit. In addition, the defendant's parents testified on his behalf as did the Reverend Leroy Marset, who has become acquainted with defendant since his detention.

The defendant attempted to show that the threat made to Agent Delmore was made in the heat of the moment and that he did not intend to carry it out. The Court, however, treats threats to kill law enforcement officials very seriously, and is not persuaded by the defendant's apparent remorse.

The defendant agreed, if released on bond, to abide by any and all conditions established by the Court.

## CONCLUSIONS OF LAW

### A. THE BAIL REFORM ACT

The United States Supreme Court discussed the application of the detention provisions of the Bail Reform Act in *United States v. Salerno*, 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). In *Salerno*, the detained defendants asserted that the Act was facially unconstitutional as it violated the Due Process Clause of the Fifth Amendment and the Eighth Amendment provision against excessive bail. *Id.* at 744, 107 S.Ct. at 2100. The Court rejected both challenges and found the Act to be constitutional on its face. *Id.* at 755, 107 S.Ct. at 2105.

The Court first looked to the legislative history of the Act, and found that the Act "represents the National Legislature's considered response to numerous perceived deficiencies in the federal bail process." Further, "Congress hoped to 'give the courts adequate authority to make release decisions that give appropriate recognition to the danger a person may pose to others if released.'" *Id.* at 742, 107 S.Ct. at 2098, *quoting* S.Rep. No. 225, 98th Cong., 1st Sess. 3, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3185. The Act sets forth certain provisions which must be satisfied for detention to be ordered. 18 U.S.C. sec. 3141(a). The Court noted that an order of detention must be supported by a number of findings by the district court:

> The judicial officer is not given unbridled discretion in making the detention determination. Congress has specified the considerations relevant to that decision. These factors include the nature and seriousness of the charges, the substantiality of the Government's evidence against the arrestee, the arrestee's background and characteristics, and the nature and seriousness of the danger posed by the suspect's release. sec. 3142(g). Should a judicial officer order detention, the detainee is entitled to expedited appellate review of the detention order. secs. 3145(b), (c).

*Id.* at 742–43, 107 S.Ct. at 2099.

### B. DETENTION STANDARDS

Initially, this Court notes that the *Salerno* decision rejected the argument that pretrial detention is actually impermissible punishment before trial. The Court stated:

> The legislative history of the Bail Reform Act clearly indicates that Congress did not formulate the pretrial detention provisions as punishment for dangerous individuals. See S.Rep. No. 98–225, at 8. Congress instead perceived pretrial detention as a potential solution to a pressing societal problem. *Id.,* at 4–7. There is no doubt that preventing danger to the community is a legitimate regulatory goal.

481 U.S. at 747, 107 S.Ct. at 2101 (citations omitted).

The rebuttable presumption in favor of detention under sec. 3142(e) acts to shift the burden of production, but not the bur-

den of persuasion, to the defendant. *United States v. Portes*, 786 F.2d 758, 764 (7th Cir.1986), *citing United States v. Jessup*, 757 F.2d 378, 381–89 (1st Cir.1985). Therefore, this Court must consider the presumption in favor of detention as a factor in its determination whether any condition or combination of conditions exist that would reasonably assure the defendant's appearance and the safety of the community. These conditions need not guarantee the defendant's appearance. *Portes*, 786 F.2d at 764, n. 7. As the Seventh Circuit stated in *United States v. Dominguez*, 783 F.2d 702 (7th Cir.1986), the presumptions in sec. 3142(e):

do not disappear when rebutted, like a "bursting bubble" presumption, nor do they actually shift the burden of persuasion to the defendant. They are "rebutted" when the defendant meets a "burden of production" by coming forward with some evidence that he will not flee or endanger the community if released. Once this burden of production is met, the presumption is "rebutted".... Use of that word in this context is somewhat misleading because the rebutted presumption is not erased. Instead it remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in sec. 3142(g).

*Id.* at 707.

In *Salerno*, the Court drew a distinction between the issues of "risk of flight" and "danger to the community" in light of the Eighth Amendment. The Court recognized that the Eighth Amendment does not limit the issue of detention "solely to questions of flight." 481 U.S. at 754, 107 S.Ct. at 2105. The Court found:

The only arguable substantive limitation of the Bail Clause [of the Eighth Amendment] is that the government's proposed conditions of release or detention not be "excessive" in light of the perceived evil. Of course, to determine whether the government's response is excessive, we must compare that response against the interest the government seeks to protect by means of that response. *Thus, when the government has admitted that its*

*only interest is in preventing flight, bail must be set by a court at a sum designed to ensure that goal, and no more.... We believe that when Congress has mandated detention on the basis of a compelling interest other than prevention of flight, as it has here, the Eighth Amendment does not require release on bail.*

*Id.* at 754–55, 107 S.Ct. at 2105 (emphasis added) (citation omitted). When the basis for detention is the danger the defendant presents to the community, 18 U.S.C. sec. 3142(f)(2)(B) requires the government to prove by clear and convincing evidence that no condition or set of conditions will assure the safety of the community. *Portes*, 786 F.2d at 764. Detention is clearly available under those circumstances where the government has shown the defendant to be a danger to the community.

18 U.S.C. sec. 3142(f) provides, in part:

(f) **Detention hearing.**—The judicial officer shall hold a hearing to determine whether any condition or combination of conditions set forth in subsection (c) of this section will reasonably assure the appearance of the person as required and the safety of any other person and the community—

(1) upon motion of the attorney for the Government, in a case that involves—

.　　.　　.　　.　　.

(C) an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Expert Act (21 U.S.C. 951 et seq.), or section 1 of the Act of September 15, 1980 (21 U.S.C. 955a);

As previously noted, Wagner is facing serious drug charges with a potential sentence that far exceeds the ten year threshold of 18 U.S.C. sec. 3142(f)(1)(C).

As the Court stated in *Salerno*, the legislative history of sec. 3142(f) reveals that Congress found that individuals charged with extremely serious offenses, like those Wagner faces, "are far more likely to be

responsible for dangerous acts in the community after arrest." 481 U.S. at 750, 107 S.Ct. at 2103, *citing* S.Rep. No. 225, at 6–7. Further:

> Nor is the Act by any means a scattershot attempt to incapacitate those who are merely suspected of these serious crimes. The Government must first of all demonstrate probable cause to believe that the charged crime has been committed by the arrestee, but that is not enough. In a full-blown adversary hearing, the Government must convince a neutral decisionmaker by clear and convincing evidence that no conditions of release can reasonably assure the safety of the community or any person. 18 U.S.C. sec. 3142(f). While the Government's general interest in preventing crime is compelling, even this interest is heightened when the Government musters convincing proof that the arrestee, already indicted or held to answer for a serious crime, presents a demonstrable danger to the community. Under these narrow circumstances, society's interest in crime prevention is at its greatest.

*Id.* at 750, 107 S.Ct. at 2103.

The specific factors which are to be considered in a detention ruling are set forth in 18 U.S.C. sec. 3142(g):

> (g) Factors to be considered.—The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—
>
> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. . . .

Representative of the specific circumstances giving rise to the strong probability "that no form of conditional release will be adequate" are cases in which the defendant is charged with narcotic drug trafficking offenses. S.Rep. No. 225 at 19, U.S.Code Cong. & Admin.News 1984, 3202, *cited in United States v. Dominguez*, 629 F.Supp. 701, 704 (N.D.Ind.), *aff'd*, 783 F.2d 702 (7th Cir.1986). Further:

> It is well known that drug trafficking is carried on to an unusual degree by persons engaged in continuing patterns of criminal activity. Persons charged with major drug felonies are often in the business of importing or distributing dangerous drugs, and thus, because of the nature of the criminal activity with which they are charged, they pose a significant risk of pretrial recidivism.

*Id.* at 705, *quoting* S.Rep. No. 225, *reprinted in* U.S.Code Cong. & Admin.News at 3182, 3203. The legislative history, therefore, supports the finding that, due to the nature of the offenses and the possible penalties which the defendant faces, a weighted factor exists which triggers the presumption that no condition or combination of conditions will assure the safety of the community. "In creating this presumption, Congress determined that the type of drug trafficking alleged in this indictment is a serious danger to the community. Especially significant is the drug network's ability to continue to function while the defendant awaits trial." *Portes*, 786 F.2d at 765.

The evidence here presented supports a finding that the defendant is facing serious federal charges with a potential sentence well in excess of ten years. The defendant is charged with possession and intent to distribute in excess of five kilograms of cocaine. A large quantity of drugs is often indicative of participation in a drug distribution network, as opposed to possession for casual or personal use. Further, the weight of the evidence against the defendant appears to be strong. Audio tapes, eyewitnesses and confidential informant's testimony; the threat to the agent; the quantity of drugs involved; the presence of weapons, one loaded, in the house; together with substantial circumstantial evidence that the defendant has a history of drug dealing and a history of difficulty with the law, all weigh in favor of the finding that the defendant poses a significant threat to the community.

The defendant offered evidence of his character and history, his family and community ties and his social stability to suggest that he would be less likely to be a threat to the community by engaging in drug trafficking, or other criminal activity, upon pretrial release. However, these factors take on a diminished role in light of the evidence presented and the defendant's history. In its ruling on remand, the district court in *Dominguez* noted, "when the offenders are involved with more than isolated street level transactions their business, family and community ties have little effect on inhibiting continued criminal activity while on pretrial release." 629 F.Supp. at 711.

### SUMMARY

Considering all of the evidence presented at the de novo hearing, the Court finds that the government has established by clear and convincing evidence that the defendant is a continuing threat to the community in light of the evidence of his offense and his criminal history. The evidence of defendant's social stability is clearly outweighed by the nature and circumstances of the offense. The Court finds that no condition or combination of conditions, as set forth in 18 U.S.C. sec. 3142(c), can assure the appearance of the defendant as required and the safety of the community.

Therefore, the defendant's Motion to be Admitted to Bail is DENIED. The Court ORDERS the defendant, Mark C. Wagner, DETAINED without bail, pending trial, pursuant to 18 U.S.C. sec. 3142.

The defendant is committed to the custody of the Attorney General for confinement in a correctional facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

And further ORDERS that the defendant shall be afforded reasonable opportunity for private consultation with counsel; and, on Order of a Court of the United States, or an attorney for the government, the person in charge of the correctional facility to which he is confined shall deliver him to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

IT IS SO ORDERED.