**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Antonio DOMINGUEZ and Roberto Rodriguez, Defendants-Appellants.**

**No. 85–2990.**

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 15, 1986.

Decided Feb. 13, 1986.

---

img_1

Antonio J. Curiel, Rios & Curiel, Chicago, Ill., for defendants-appellants.

Samuel Rosenthal, Dept. of Justice, Appellate Div., Washington, D.C., Gregory A. Vega, Asst. U.S. Atty., Hammond, Ind., for plaintiff-appellee.

Before BAUER, WOOD and CUDAHY, Circuit Judges.

BAUER, Circuit Judge.

Defendants appeal from an order of the district court detaining them without bail pending trial under provisions of the Bail Reform Act of 1984, 18 U.S.C. § 3141 *et seq.* For the reasons detailed below, we vacate the order and remand to the district judge for further proceedings.

## FACTS

Defendants were indicted on cocaine-trafficking charges on July 19, 1985 in the Northern District of Indiana.[1] They were arrested in Florida and appeared before a magistrate in Miami on July 23. The magistrate conducted a hearing under Rule 40(a), Fed.R.Crim.P. Bond was set at one million dollars for each defendant, but was reduced to $500,000 for defendant Rodriguez on July 26.

After removal proceedings in Florida the defendants were transported to Indiana, where they first appeared on August 27. At that time the defendants moved for reduction of bond. The government for the first time moved for pretrial detention under 18 U.S.C. § 3142(e). Over defendants' objections, the presiding magistrate held a detention hearing on August 29 and afterward ordered them detained. Defendants filed motions with the assigned district judge for revocation of that order and renewed their motion for reduction of the bond set in Florida.

On October 25 the judge revoked the magistrate's detention order, agreeing with defendants that the government had waived its right to request pretrial detention by failing to do so at their first appearance in Florida. The judge then announced his intention to conduct a *de novo* hearing on defendant's motion to modify the Florida bond, at which he would consider whether the monetary bond was set too high as well as "whether bail should have been set at all." *Memorandum Decision and Order,* October 25, 1985, at p. 9. That hearing was held on October 29. In an order issued on November 5 the judge concluded that he had the authority to detain defendants on his *own* motion upon review of defendants' motion for bail reduction. He reviewed the evidence presented to him at the October 29 hearing as well as that presented at the August 29 hearing before the magistrate, and concluded that defendants had not rebutted the statutory presumption that they were dangerous to the community. He also found that, "if given the benefit of the doubt," defendants *had* rebutted the presumption that they would flee if released. Based on the former finding, the judge ordered them detained. Defendants appealed to this court under 18 U.S.C. § 3145(c), and filed a motion for reversal of the detention order in accordance with the procedure directed in *United*

---

1. The indictment named 32 defendants in all and included 61 counts charging violations of the Controlled Substances Act, 21 U.S.C. §§ 841(a)(1), 843(b) and 846, as well as 18 U.S.C. § 1952 (prohibiting interstate travel to promote unlawful activity).

*States v. Daniels*, 772 F.2d 382, 383–384 (7th Cir.1985).

## I.

Defendants argue that the district judge had no authority to detain them after he concluded, correctly in their view, that the government had waived its right to seek pretrial detention by not requesting it in Florida. We disagree with that initial conclusion and find that the government's request for detention at the first Indiana appearance was timely.

The Bail Reform Act provides a judicial officer with several pretrial custodial options. *See* 18 U.S.C. § 3142(a). The most severe of these is detention without bail, as provided under § 3142(e). Before a person may be detained, though, a "detention hearing" must be held in accordance with the procedures prescribed by § 3142(f). That subsection describes the conditions under which detention may be requested and further requires that "[t]he hearing shall be held immediately upon the person's first appearance before the judicial officer unless that person, or the attorney for the government, seeks a continuance." Continuances are limited, absent good cause, to three days at the government's request and five days at the defendant's.

The district judge held in his October 25 order that defendants' "first appearance" for purposes of § 3142(f) took place in Florida, where the initial obligation to set conditions of release attached. Under Rule 40(a), Fed.R.Crim.P., a defendant arrested in a district other than that in which he is charged is entitled to an initial appearance as provided by Rule 5, Fed.R.Crim.P. One of the requirements of Rule 5(c) is that the magistrate "shall detain or conditionally release the defendant as provided by statute or in these rules." The district judge reasoned that the "first appearance" clause of § 3142(f) obliged the government to make its detention request when the duty to set bond first arose under the rules, or to be thereafter barred from seeking it.[2]

Although it is semantically tempting to equate the expressions "initial appearance" and "first appearance", we do not believe that such an interpretation is consistent with the policies behind pretrial detention or with the requirements for its employment under the Bail Reform Act. To require the government (or the court, *see* § 3142(f)(2)) to decide whether to seek detention when a defendant first appears in a non-charging district places the decision in the hands of persons who are not only less concerned about the ultimate proceedings but also, more importantly, much less likely to have the knowledge of the defendant and of the charges against him that is required to make an informed decision on whether detention is appropriate. The result, we are sure, would be many "automatic" requests by prosecutors for continuances in cases where a defendant was charged in another district as specified in § 3142(f)(1). Defendants would be detained during these continuances, which could become extended if the inability to obtain information promptly from the charging district constituted "good cause."

While the legislative history does suggest that the automatic continuances are available to facilitate preparation for a detention hearing,[3] we do not believe that

---

**2.** In so holding the judge relied on *United States v. Payden*, 759 F.2d 202 (2d Cir.1985), and *United States v. O'Shaughnessy*, 764 F.2d 1035 (5th Cir.1985), *vacated on rehearing as moot*, 772 F.2d 112 (5th Cir.1985). Neither of these cases involved a defendant arrested in a district other than that in which he was charged. We regard this distinction as critical in view of our analysis of the "first appearance" requirement and its application to the facts before us, as detailed *infra*. We do not mean, by our decision in this case, to accept or reject the strict construction analysis applied to the Bail Reform Act in single-district cases like *Payden* and *O'Shaughnessy*

or the more flexible approach outlined in *United States v. Maull*, 773 F.2d 1479, 1483 (8th Cir. 1985) (*en banc*). We simply regard the situation at bar as being of a very different sort.

**3.** S.Rep. No. 225, 98th Cong., 1st Sess. at 21–22, *reprinted in* 1984 U.S.Code Cong. & Ad.News 3182, 3204–3205. It does not appear that Congress gave any consideration to the problems that multi-district proceedings would generate. The Report seems only to contemplate proceedings within a single district.

they should be used in wholesale fashion by prosecutors or courts forced to protect their detention positions as to a defendant they may never have heard of before that day. Nor do we believe that a prosecutor or court in a charging district must be foreclosed from pursuing pretrial detention because officials in an arresting district decline to detain a defendant in the absence of full information. In some cases, of course, circumstances may make it appropriate to request detention in the arresting district. Nevertheless we believe that the most informed decisions will almost always be made in the charging district by prosecutors that have supervised the investigations and by courts that will supervise the remaining proceedings. Those officials should always have the option of seeking detention within the statute's limits and according to its procedures.

Our conclusion is further supported by reference to the parameters of the detention hearing required under § 3142(f). While it is not intended that it become a full-blown trial on the charges at issue, the nature of the charged offenses and the weight of the evidence against the defendant are among the factors to be explored. *See* § 3142(g)(1); S.Rep. 225, *supra* n. 3, at p. 22 (1984 U.S.C.C. & A.N. at 3205). The best assessment of these factors will most assuredly be available in the charging district.

Although our conclusion is based on pragmatic considerations, we do not believe that we have violated legislative intent in reaching it. The "first appearance" clause is not entirely unambiguous, referring as it does to "the judicial officer" without expressly limiting its meaning to those acting at a particular stage of the proceedings. This clause could be read, as at least one court has read it,[4] to refer to the first appearance before any judicial officer; a person would then have as many "first appearances" as judicial officers his bail

determination came before (arguably including judges of this court).

Reading the "first appearance" clause of § 3142(f) to require that pretrial detention be raised outside the charging district or never again would tie the hands of the officials with the greatest interest in detention and the best opportunity to fully litigate the issues that the statute makes critical to detention rulings. We would regard such a requirement as inconsistent both with the purpose behind the availability of pretrial detention under the Act (*i.e.* that courts have available to them the powers necessary to assure the appearances and behavior of defendants throughout their proceedings) and with the Act's detailed procedures, including the requirement of and specifications for a hearing. These procedures suggest that pretrial detention should be neither sought nor ordered absent careful consideration. It makes no sense to mandate in multi-district situations that these procedures be conducted in the district court with the lesser interest in the defendant and less complete knowledge of his case.

Accordingly we conclude that the government's detention motion, made at defendants' first appearance in the charging district, was timely made under § 3142(f).[5]

## II.

■ The district judge never reviewed the magistrate's detention order under 18 U.S.C. § 3145(b), although he should have in light of our conclusion set forth in part I of this opinion. It might seem to be a waste of judicial time to remand for that purpose in view of the judge's finding, albeit one made on his own initiative, that defendants were dangerous to the community. Nevertheless the defendants have also challenged the judge's interpretation of the presumption of dangerousness found in 18 U.S.C. § 3142(e), which was the basis

---

4. *Maull,* 773 F.2d at 1482–83, and n. 2.

5. Because of our resolution of this issue we do not reach the issue of the district court's power to order detention *sua sponte* on consideration

of a motion to reduce bond under 18 U.S.C. § 3145(a)(2). *See, e.g., Maull,* 773 F.2d at 1482–85.

for the detention order. We are therefore compelled to consider this challenge.

The Bail Reform Act of 1984 creates several evidentiary presumptions to be employed in certain circumstances in determining what (if any) release conditions are appropriate. As regards pretrial detention, the Act specifies that:

> Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.),....

18 U.S.C. § 3142(e). In his order of November 5, the district judge reviewed the record of his own hearing and of that held by the magistrate [6] and made a finding of probable cause to believe that defendants had committed crimes punishable under the Controlled Substances Act by terms of more than ten years' imprisonment. He went on to apply the presumption of dangerousness to them:

> The court must now consider whether defendants have presented evidence which would tend to rebut that presumption. Absolutely no evidence has been presented to rebut the presumption that defendants will present a danger to the community upon their release. No evidence was offered to rebut the presumption that defendants' involvement in a narcotics distribution organization presents a danger to the community.... Neither Dominguez nor Rodriguez has offered evidence to rebut the government's evidence that there is probable cause to believe that they were involved in a drug distribution scheme. The court finds therefore, that defendants have not rebutted the statutory presumption that they are a danger to the community.

*Amended Order* of November 5, 1985, at p. 7–8. The judge made no other findings on the issue of dangerousness.

Under the district court's interpretation, few if any defendants in narcotics cases could ever rebut the presumption of dangerousness and thereby defeat pretrial detention. A defendant can hardly be expected, after all, to demonstrate that narcotics trafficking is not dangerous to the community. Nor can a defendant "rebut" the government's showing of probable cause to believe he is guilty of the crimes charged. That showing is not really at issue once the presumptions in § 3142(e) have been properly triggered; [7] evidence probative of guilt is admitted at a detention hearing only to support or challenge the weight of the government's case against the defendant. *United States v. Hurtado*, 779 F.2d 1467, 1479–1480 (11th Cir.1985). This is only one of the factors relevant to detention. 18 U.S.C. § 3142(g)(2).

A defendant cannot be detained as dangerous under § 3142(e), even if the pre-

---

**6.** The defendants argue that they were denied confrontation rights guaranteed by the Sixth Amendment when the judge considered and relied on the transcript of the August 29 magistrate's hearing as well as that of his own. This contention is meritless. Both defendants were represented at the earlier hearing by counsel, and both attorneys cross-examined the government's lone witness. It was not necessary to specifically "incorporate" the August 29 transcript into the October 29 hearing record; that transcript was already a part of the record of the case. The Sixth Amendment does not require further opportunities to "confront" the transcript anew.

**7.** Defendants assert that the district judge failed to make an explicit probable cause finding on

the record at the October 29 hearing before he applied the presumption in § 3142(e). Nothing in that provision requires a finding on the record at the hearing; it is only necessary that the finding be made before the presumption is applied. We agree with the courts that have concluded that such a finding may be based solely on an indictment charging crimes sufficient to trigger the presumptions. *See United States v. Hurtado*, 779 F.2d 1467, 1477–79 (11th Cir.1985); *United States v. Contreras*, 776 F.2d 51, 54 (2d Cir.1985). A defendant indicted for crimes that trigger the presumptions in § 3142(e) should expect the presumption to be applied to him and proceed accordingly.

sumption is not rebutted, unless a finding is made that no release conditions *"will reasonably assure ...* the safety of the community ..." (Emphasis added). That finding cannot be based on evidence that he has been a danger in the past, except to the extent that his past conduct suggests the likelihood of future misconduct. This is, indeed, the very import of the presumption of dangerousness in § 3142(e); it represents Congressional findings that certain offenders, including narcotics violators, as a group are likely to continue to engage in criminal conduct undeterred either by the pendency of charges against them or by the imposition of monetary bond or other release conditions. To rebut this presumption they need not necessarily show that they are not guilty of the charged crimes in the first place. They could also show that the specific nature of the crimes charged, or that something about their individual circumstances, suggests that "what is true in general is not true in the particular case ..." *United States v. Jessup*, 757 F.2d 378, 384 (1st Cir.1985). Any evidence favorable to a defendant that comes within a category listed in § 3142(g) can affect the operation of one or both of the presumptions, including evidence of their marital, family and employment status, ties to and role in the community, clean criminal record and other types of evidence encompassed in § 3142(g)(3).

In applying this broad view to the record of the two district court hearings, we note that the district court's own analysis may reflect some understandable confusion about the quantum of evidence necessary to "rebut" the presumptions in § 3142(e) and the effect of such "rebuttal." As we did in *United States v. Diaz*, 777 F.2d 1236, 1237 (7th Cir.1985), we refer to *Jessup* on the proper interpretation of those presumptions. In *Jessup*, 757 F.2d at 381–84, the court correctly identifies the presumptions in § 3142(e) as being of the so-called "middle ground" variety; that is, they do not disappear when rebutted, like a "bursting bubble" presumption, nor do they actually shift the burden of persuasion to the defendant. They are "rebutted" when the defendant meets a "burden of production" by coming forward with some evidence that he will not flee or endanger the community if released. Once this burden of production is met, the presumption is "rebutted" in the sense that word was used in *Jessup*. Use of that word in this context is somewhat misleading because the rebutted presumption is not erased. Instead it remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g). *Jessup*, 757 F.2d at 384. The burden of persuasion remains with the government once the burden of production is met. *Id.* at 381–82.

The burden of production is not a heavy one to meet, and our review of the record convinces us that it has been met here. Defendants are both Cuban immigrants who have lawfully been in this country for about 5 years. Neither has any criminal record in the United States, although both were political prisoners in Cuba. Mr. Rodriguez, at the time of his arrest, was employed as a body shop mechanic and had been so for some time. Mr. Dominguez is married and has family in Florida and in Nevada; he has been employed as a welder since coming to this country and owns a welding business incorporated in Florida. This evidence of economic and social stability, coupled with the absence of any relevant criminal record, at least suggests that defendants would be less likely to continue to engage in criminal activity while on pretrial release.

### III.

The district court's finding of dangerousness was based solely on the application of the presumption in § 3142(e). Because it was preliminarily rebutted, conclusive application of the presumption was improper. We now vacate that finding and remand to the district court for further consideration consistent with this opinion and entry of

new findings[8] on the availability of any reasonable conditions of release that will assure the safety of the community.

---

**8.** Defendants' counsel suggested at oral argument that he did not offer additional evidence on the issue of defendants' dangerousness at the second hearing because he was unaware that the district judge was considering pretrial detention at that time. He should have been aware of it after the judge's specific statement of intent to consider "whether bail should have been set at all." *Order* of October 25, 1985, at p. 9. We leave to the district judge's sound discretion the question of whether, and if so how, additional

evidence should be taken on remand. In exercising this discretion the judge must bear in mind that a finding that no reasonable conditions of release will keep a defendant from endangering the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f); *see also* S.Rep. No. 225 *supra* n. 3, at p. 22 (1984 U.S.C.C. & A.N. at p. 3205).