Deborah Sharp, Asst. U.S. Atty., Concord, N.H., for plaintiff.

Suzanne E. Groff, Portsmouth, N.H., for defendant.

**UNITED STATES of America**

v.

**Kevin David ACHESON.**

**No. 87–44M–01.**

United States District Court,
D. New Hampshire.

Oct. 20, 1987.

## ORDER

DEVINE, Chief Judge.

This Order addresses what appears to be a legal issue of first impression. It arises in the context of a motion seeking to have this Court set aside an ex parte order issued by the chief judge of another district court. Specifically, the relief sought by the defendant Kevin David Acheson is that I set aside the ex parte order of Chief Judge Edward C. Reed of the United States District Court for the District of Nevada. That order, purportedly issued pursuant to the provisions of 18 U.S.C. § 3145(a),[1] stayed the order of Magistrate Barry in this district admitting defendant to bail.

---

1. 18 U.S.C. § 3145(a) provides:

    **(a) Review of a release order.**—If a person is ordered released by a magistrate, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court—

    (1) the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release; and

    (2) the person may file, with the court having original jurisdiction over the offense, a motion for amendment of the conditions of release.

    The motion shall be determined promptly.

The relevant facts are as follows. On September 30, 1987, the grand jury in the District of Nevada returned a multi-page, multi-count indictment against numerous defendants, including Mr. Acheson. The offenses with which he is charged include violations of Title 21 United States Code.

Acheson, who has resided in New Hampshire since early 1984, was arrested by an FBI agent on October 2 and brought before the Magistrate, and the prosecution immediately requested a detention hearing. 18 U.S.C. § 3142(f). The hearing was scheduled for the following Monday, October 5, 1987,[2] but ultimately hearing thereon did not commence until October 7, 1987.[3]

At the hearing, the Government's only witness was an FBI agent who testified to his familiarity with the investigation which led to the return of the indictment in Nevada and then set forth allegations as to certain pending California offenses, some of which involved traffic violations, with respect to the defendant. It appears, however, that, in return, counsel for defendant made an offer of proof with respect to her telephone conversations with a California attorney who had represented the defendant in regard to all of these offenses. With the exception of a drug offense then pending in San Diego, all of these California offenses had been disposed of to the satisfaction of the prosecutorial authorities involved therein.

With respect to the San Diego offense, it appears that defendant had been arrested in early May 1984 in New Hampshire and had been brought before a state court of competent jurisdiction. The dual charges were his then possession of a drug and the outstanding San Diego warrant claiming he was a fugitive from justice. The New Hampshire drug offense was disposed of by reduction to a motor vehicle charge, and California then advised the New Hampshire law enforcement authorities that it did not wish to extradite defendant for purposes of prosecution on the drug offense. Accordingly, the fugitive from justice charge was nol prossed in the New Hampshire court.

From early May 1984 until his arrest on October 2, 1987, defendant has been an exemplary citizen. He has married a long-time sweetheart, has worked as a bricklayer, and now operates his father's heat-treating business, and has volunteered to assist friends and neighbors in countless construction and other worthwhile projects. Prior to his marriage, he advised his prospective in-laws of his difficulties with the law and his desire to turn a new leaf, and he has built his own house for his family unit, which currently comprises himself, a wife, and a 2½–year–old daughter, with another child due in the spring of 1988. As above indicated, he has retained California counsel to handle and dispose of all charges relied upon by the Government at the detention hearing before Magistrate Barry, with the exception of the San Diego drug charge.[4]

Were the review of the Magistrate's findings which caused him to admit the defendant to bail before me for review, I would find that "clear and convincing evidence", 18 U.S.C. § 3142(f), "that no condition or

2. 18 U.S.C. § 3142(f) permits the Government, when moving for a detention hearing, a continuance of three days. Defendant is similarly entitled to a continuance of five days. The hearing on October 7 was within this five-day period.

3. The continuances requested, to which the Government agreed, were caused initially by the illness of Attorney Dunn, who had been retained as counsel for defendant, and the necessity of his associates to familiarize themselves with the case to appear in his stead. Also, it appeared that the Government was going to proffer, in addition to the probable cause circumstances set forth in the indictment, certain alleged still-pending California offenses against defendant.

4. The outline of the facts hereinabove stated is gleaned from this judge's listening for approximately three hours to the tapes of the detention hearing before the Magistrate. The Government concedes that none of this evidence was presented in the ex parte application to Judge Reed. When offered the opportunity to speak with the California counsel for defendant with relation to the dismissal of the charges hereinabove discussed, the prosecuting attorney in this district declined to do so. Subsequently, it appears that prosecutorial authorities in Nevada *may have* caused the San Diego authorities to change their mind and to seek once more for extradition of defendant on the pending drug charge in that jurisdiction.

combination of conditions will reasonably assure the safety of any other person and the community" does not exist to support the position of the Government that defendant Acheson should not be entitled to bail as ordered by the Magistrate. Simply put, the term "safety of any other person or the community" set forth in the statute is to be defined as follows:

> The reference to safety of any other person is intended to cover the situation in which the safety of a particular identifiable individual, perhaps a victim or witness, is of concern, while the language referring to the safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community.

1984 U.S.Code Cong. & Admin.News 3182, 3195 (legislative history of Bail Reform Act).

Additionally, although "safety" is afforded a broader construction than "safety from physical violence", and includes continued drug operations, the Government presented not one scintilla of evidence that since May of 1984, a period of almost three and one-half years, defendant has been engaged in any illegal occupation, including the sale or manufacture of drugs.

As at least one court has aptly pointed out, it does not appear that Congress in adopting the Bail Reform Act, gave any consideration to the problems that multidistrict proceedings would generate. *United States v. Dominguez,* 783 F.2d 702, 704 n. 3 (7th Cir.1986). This is passing strange, when one considers that that return of an indictment is sufficient to establish probable cause for the purposes of triggering the rebuttable presumptions set forth in 18 U.S.C. § 3142(e). *United States v. Vargas,* 804 F.2d 157, 163 (1st Cir.1986). And a judicial officer at a detention hearing is required to consider, in addition to the criminal offenses charged and the weight of evidence against the defendant, his history and characteristics, including his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, etc. 18 U.S.C.

§ 3142(g)(1), (2), (3)(A). It is difficult to ascertain how such personal history and ties to the community can be developed unless by hearing before the judicial officer in the community in which the defendant has resided, at least in cases where, as here, such residence has been continuous for a period of approximately three and one-half years.

Had the Government desired to do so, it could have merely sought a transfer pursuant to Rule 40, Fed.R.Crim.P., and opted for an initial detention hearing before the judicial officer in the District of Nevada. *United States v. Dominguez, supra.* Here, however, it chose a detention hearing in this district, and after lengthy presentation of evidence, having failed to persuade the Magistrate that detention should be ordered, it sought review, purportedly pursuant to 18 U.S.C. § 3145(a). *Supra* note 1.

The term "purportedly" is here inserted advisedly. I do not believe that the legislative history or the Act itself contemplate the filing of an ex parte motion of the type which I have now had the opportunity to here review and the issuance of an ex parte order when the scant judicial resources of this district have been expended, at the request of the prosecutorial authorities, on a detention hearing. I am aware, however, of the language in *United States v. Spilotro,* 786 F.2d 808, 815 (8th Cir.1986), wherein it is stated:

> We therefore hold that § 3146(e) granted the court with original jurisdiction over the offense charged the authority to amend sua sponte and at any time the conditions of release. To hold otherwise would sharply restrict the discretion of the trial court to determine pretrial matters. In addition, requiring a remand of the case to the releasing judicial officer in order to amend conditions of release would waste limited judicial resources.

In sum, while I believe the evidence presented before Magistrate Barry accorded with the recent holding of the Supreme Court of the United States that the Bail Reform Act

authorizes the detention prior to trial of arrestees charged with serious felonies who are found after an adversary hearing to pose a threat to the safety of individuals or to the community which no condition of release can dispel. The numerous procedural safeguards detailed above must attend this adversary hearing,

*United States v. Salerno,* — U.S. —, —, 107 S.Ct. 2095, 2105, 95 L.Ed.2d 697 (1987), and while I am satisfied that Mr. Acheson should not be detained, I find and rule that I do not have or possess jurisdiction to set aside the ex parte order of Chief Judge Reed.

I would be remiss, however, in my duties as Chief Judge of this District if I did not go on to further point out that I think the position of the Department of Justice in this case, described in the course of argument before our Magistrate by a local Assistant United States Attorney as "a classic response" to situations of the type here at issue, borders dangerously on abuse of criminal process. It is my understanding that this is a position taken by the Department of Justice, and I strongly disagree with such position, but I do not impute any improper action to any of the attorneys employed in the Office of the United States Attorney for the District of New Hampshire, as they were merely following directives in this regard. I am satisfied, however, that henceforth, when arrests are had in the District of New Hampshire pursuant to indictments or informations filed in other districts, a new procedure must be developed to prevent such waste of scant judicial resources as has been here demonstrated. Until drafting of a new rule governing such procedure, I do herewith order that I am to be personally notified when any such case arises, and, if a detention hearing is opted for, I will then decide how and when hearings will be held with respect to detention or release on bail of any such arrestees. In the event the choice is merely to transfer the accused to the district in which the indictment is pending pursuant to Rule 40, Fed.R.Crim.P., then notice after the fact will be sufficient. It is my fervent hope that by following a procedure as hereinabove outlined I might well be able to avoid two (or, as here, three) bites at the apple of detention, involving the waste of countless hours of judicial manpower.

For the reasons hereinabove detailed, albeit reluctantly, the motion to set aside the ex parte order of Judge Reed must be and is herewith denied.

SO ORDERED.