**UNITED STATES of America, Plaintiff,**

**v.**

**Charles Dehart JONES, Defendant.**

**No. IP 92–130–CR.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

Oct. 15, 1992.

John Dowd, Asst. U.S. Atty., Office of the U.S. Atty., Indianapolis, Ind., for plaintiff.

Robert W. Hammerle, Indianapolis, Ind., Edward H. Laber, Tucson, Ariz., for defendant.

## RENEWED ORDER OF DETENTION

TINDER, District Judge.

For the reasons stated in an Entry filed contemporaneously with the Order, the Court ORDERS that the defendant be detained pending trial on the following terms and conditions: The defendant, CHARLES DEHART JONES, is hereby committed to the custody of the Attorney General or his designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. That the defendant shall be afforded a reasonable opportunity for private consultation with defense counsel. Upon order of a Court of the United States or on request of an attorney for the government, the person in charge of the corrections facility shall deliver the defendant to the United States Marshal for the purpose of an appearance in connection with a Court proceeding.

## RULING ON DEFENDANT'S APPEAL OF ORDER OF DETENTION

The dispute in this detention/pretrial release issue may really be about the procedural posture of this matter rather than the substance of the facts. The parties don't dispute what route the case took in its journey here, but they surely don't agree on what effect, if any, that route should have on this court's review of the earlier rulings by two Magistrate Judges. An attempt will be made to briefly describe how this matter got here and then an effort will be made to sort out the legal significance of the detention/release decisions made along the way. Finally, the decision or decisions properly before the court will be reviewed to determine whether the defendant should be released pending trial.

The defendant was initially charged in this district after the filing of an affidavit by Drug Enforcement Administration (DEA) Agent Gary Alter. The affidavit and proposed criminal complaint alleged that the defendant conspired to possess and possessed a quantity of marijuana in excess of 100 kilograms. After reviewing the affidavit and proposed complaint on August 17, 1992, Chief Magistrate Judge John Paul Godich of this district issued a warrant for the defendant's arrest. Two days later, on August 19, 1992, the defendant was arrested at his home in Tucson, Arizona. He then appeared before Magistrate Judge Nancy Fiora in Tucson on August 21 for purposes of determining whether he should be released or detained pending further proceedings. The government sought detention. The hearing was continued until August 27.

At that continued hearing, the government presented additional evidence on its request for detention. The second Arizona hearing also resulted in the determination that the defendant should be removed to this district for all further proceedings. The following day, Magistrate Judge Fiora ordered that the defendant be removed to this district. She also issued a ruling denying the government's request for detention and setting conditions for pretrial release. That brief order stated:

> Government's request for detention DENIED. Short of detention, a $300,000.00 cash or corporate surety bond is a reasonable and necessary bond to reasonably assure the appearance of defendant at future court proceedings. FURTHER, defendant is to participate in an electronic surveillance program and comply with Pretrial Services' rules and regulations, including payment of the designated fee. Further conditions to be set upon release. IT IS FURTHER ORDERED: a hearing pursuant to Title 18, United States Code, Section 3142(g)(4), shall be held prior to the court's acceptance of bond proffered to secure the defendant's release.

The defendant then sought to delay his removal to this district in order to make

arrangements to post the bond. Magistrate Judge Fiora denied that request.

Thereafter, the defendant was promptly transported to Indianapolis. At his first court appearance here before Magistrate Judge Kennard Foster on September 8, 1992, the government, through the United States Attorney's Office in this district, moved for pretrial detention and followed up that oral motion with a written one the next day. The defendant opposed that motion, arguing that the government had, in effect, already had "one bite at the apple" in Arizona, and lost. Absent new evidence, the defendant argued, the government should not be permitted to make successive motions for detention. The detention/release matter was set for a hearing before Magistrate Judge Foster on September 10th.

At that hearing, the question of whether the government was entitled to a second motion or hearing on the detention question was debated. The hearing was continued until September 17th to allow Magistrate Judge Foster to get the record of the proceedings in Arizona, including the tapes of the hearings. The day before the continued hearing, the defendant was indicted by a grand jury here in a three-count indictment. The indictment charges the defendant with conspiring to possess over 1,000 kilograms of marijuana with the intention of distributing it, and with two separate counts of possessing over 50 kilograms of marijuana with the intent to distribute it. After the September 17th hearing, Magistrate Judge Foster orally announced his decision to detain the defendant, which was reduced to writing later the same day.

The defendant's appeal presently before this court followed. A hearing was set and arguments of counsel were heard. No additional evidence was presented. Transcripts of the hearings before Magistrate Judges Fiora and Foster have been reviewed.

As the notice of hearing indicated, the court presumes that defendant's motion is filed pursuant to the provisions of 18 U.S.C. § 3145(b), which permits this court to review a Magistrate Judge's detention order. The defendant's Petition for Review did not specify the authority for the review, but counsel for the defendant did not contradict the court's presumption during his argument. Pursuant to § 3145(b), this court is authorized to affirm, revoke or amend a Magistrate Judge's order.

As also noted in the notice of hearing, § 3145(b) does not specify the type of review that is to be given an appeal to the district court. Moreover, the arguments of counsel at the hearing demonstrated that this matter is one of first impression (at least insofar as reported cases under the Bail Reform Act, 18 U.S.C. § 3141 et seq., are concerned) which requires an interpretation of the Act and cases decided under it. The defendant argues that the release decision of Magistrate Judge Fiora must stand unless appealed by the government pursuant to 18 U.S.C. § 3145(a), and further, that any review of the Arizona Magistrate Judge's ruling must be done in a deferential manner, citing *United States v. Harris*, 732 F.Supp. 1027 (N.D.Cal.1990).

As for Magistrate Judge Foster's detention order, the defendant argues that it is a nullity because there is no statutory authority for the holding of a second detention hearing, absent the development of new material evidence not presented by the movant at the first hearing. *See* 18 U.S.C. § 3142(f). Implicit in this argument is an assertion that Magistrate Judge Fiora had considered all of the relevant matters during the Arizona proceedings.

The government's argument is equally intriguing. The government contends that the defendant's appearance before Magistrate Judge Fiora was on the initial complaint only, and that *United States v. Dominguez*, 783 F.2d 702 (7th Cir.1986) stands for the proposition in this circuit that the government is entitled to a detention hearing when the defendant first appears here, that is, in the district from which the charge originated. The government further argues that the defendant's situation changed materially when the indictment was returned by a grand jury here, and additional and more substantial charges were brought (thus satisfying the "new

evidence" requirement of 18 U.S.C. § 3142(f), if applicable).

Implicit in the government's argument is an assertion that Magistrate Judge Fiora's ruling is a nullity, or that it should be reconsidered *de novo*, without deference. The government concedes that this court has authority to review the defendant's detention/release status, but it contends that the proper subject of review is the Indiana Magistrate Judge's detention ruling, not the Arizona Magistrate Judge's release order. In review of either ruling, the government contends that this court starts anew, reviewing the detention/release question *de novo*, with no deference to the earlier Magistrate Judge's ruling(s).

Regardless of the manner in which this matter comes before the court in a procedural sense, the well reasoned cases appear to uniformly apply a *de novo* standard of review so that the district court can exercise independent consideration of all of the facts properly before it on such a motion. *See, e.g., United States v. Freitas,* 602 F.Supp. 1283, 1293 (N.D.Cal.1985); *United States v. Ramey,* 602 F.Supp. 821, 822 (E.D.N.C.1985); *United States v. Allen,* 605 F.Supp. 864, 867 (W.D.Pa.1985). Notwithstanding the eloquent discussion of a "middle ground" type of review in the *Harris* case cited by the defendant, no support for that position is found in either the Bail Reform Act or 28 U.S.C. § 636.

If the matter to be reviewed by this court is the Arizona Magistrate Judge's ruling, it is especially appropriate that the review be *de novo* for the simple reason that Magistrate Judge Fiora made no findings of fact whatsoever, and merely reached the conclusion that pretrial release was appropriate. Magistrate Judge Fiora hinted at her first hearing on detention that she was leaning that way (August 21 hearing, Tr. at 25.), but none of her statements at the hearings can be interpreted as articulations of her reasons for denying the government's detention motion. Similarly, Magistrate Fiora's written order quoted above gives no clues as to the reasons for denial. Thus, a non-deferential review

would be most appropriate here because the reasons for her ruling are not apparent.

Even without considering the evidence adduced before Magistrate Judge Foster and without deferring to his findings, the outcome in Arizona should have been different. Thus, the procedural posture of the review to be conducted by this court has no bearing on the detention/release decision, and that posture will be discussed only after a *de novo* review of the facts produced at the Arizona hearings, and an application of the Bail Reform Act considerations to those facts.

The bottom line is that detention should have been ordered no matter how the evidence is viewed. In reviewing the evidence, the court will first look at the evidence presented at the Arizona hearings and indicate what the appropriate ruling should have been at the conclusion of those hearings. Next, the court will review the proceedings in Indiana to determine whether any modification of the decision should have been made.

### The Arizona Hearings

█ 1. The charges contained in the complaint gave rise to a rebuttable presumption that no condition or combination of conditions will assure the appearance of the defendant as required or the safety of the community by virtue of the provisions of 18 U.S.C. § 3142(e) and (f). The charge of conspiracy in connection with 100 or more kilograms of marijuana as alleged in the affidavit and proposed criminal complaint carries a penalty of imprisonment of a maximum term of forty years. 21 U.S.C. §§ 846 and 841(b)(1)(B)(vii). The evidence detailed in the probable cause affidavit shows that the case against the defendant is a strong one. Those details are set forth in the affidavit, and will not be repeated here. It should be noted, though, that the affiant, DEA Agent Alter, testified at an Arizona hearing and his probable cause affidavit was not challenged, even though it could have been subjected to cross examination.

2. The government then presented the testimony of two DEA agents, Tracy Dona-

hue and Gary Alter. Through their testimony, the government established the following facts.

Agent Donahue arrested Jones. On the morning of the arrest, upon arrival at Jones's home, Agent Donahue and others identified themselves as law enforcement officers and attempted to gain entry into the home. A male voice responded to their inquiries, but then the speaker retreated from the door. Two different agents then attempted to kick in the front door to execute the warrant. Eventually, Jones came back to the door and allowed the agents to enter. Jones was the only adult male in the house. Upon arrest, Jones initially denied attempting to flee, but later said that he started to go out the back door, thinking that he was going to be "ripped", but that he changed his mind and did not want to leave his wife there. The defendant, through counsel, conceded that he was initially attempting to leave the house through the back, purportedly because he thought he was going to be robbed. When Jones was arrested, no weapons were recovered, although during the investigation, the case agent had learned from informants that Jones had displayed and bragged about a firearm in connection with drug transactions.

The Pretrial Services Officer pointed out to Magistrate Fiora that after the arrest, Jones was asked whether he had a driver's license, and Jones responded that he had an expired Arizona driver's license. However, Jones did not disclose that he had a valid Utah driver's license. Counsel for the defendant had previously argued that Jones was a long-time resident of Tucson, with substantial ties to that community, including a steady work history. (August 21 hearing, Tr. at 3, 4.) When the Utah driver's license was disclosed, defense counsel proffered a ready explanation that Jones had ventured briefly to Utah to see if he could "dabble" in real estate there. (August 21 hearing, Tr. at 29.)

After the continuance of the hearing, the case agent, Agent Alter travelled to Tucson to participate in the detention and removal hearings. Agent Alter testified that his investigation revealed that a person using the name "Skip Gallant" had obtained the Nevada driver's license in question by using the same Social Security number as that on Jones' expired Arizona license. The defendant has a brother, William Scott Jones, who was arrested in February 1992 on federal drug charges from this district. According to an informant referred to in Agent Alter's probable cause affidavit, the defendant was aware of his brother's February arrest, and he planned to limit his marijuana distribution practices to keep the amount of each transaction below 100 kilograms. Agent Alter indicated that William Scott Jones frequently used aliases, but that he was never known to use the alias "Skip Gallant." Further, the defendant had moved twice, according to Agent Alter, after his brother's February arrest (although both times in the Tucson area.)

Through another affidavit, which was subjected to cross examination, Agent Alter indicated that between January and August of 1992 a marijuana transporter for the defendant had been paid over $100,000 by the defendant for driving pot loads. Agent Alter also indicated that the defendant had a motor vehicle with a Utah license plate.

3. The defendant presented no evidence at the detention hearing. Defendant's counsel proffered certain information about the defendant and his community ties to Tucson, but the proffer was not subjected to cross examination by government counsel. Counsel also made a proffer about what the defendant's wife would testify about if she were called. Although she was present and was available to testify, she did not. Counsel also proffered what the defendant's brother and parents would have said if they had testified.

■ This court is not familiar with the procedure apparently used in the District of Arizona by which defense counsel is permitted to proffer matters rather than present testimony. However, such a process does not produce evidence, rather, it represents what counsel believes he could prove. Accordingly, it should not be given much weight, if any.

CONCLUSIONS OF LAW

 Pursuant to 18 U.S.C. § 3142(e), a judicial officer must determine whether any condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community in deciding whether to grant the government's Motion for Detention. The government, alleging that the defendant poses an unacceptable risk of flight bears the burden of proof by a preponderance of the evidence. *United States v. Portes,* 786 F.2d 758, 765 (7th Cir.1985); *United States v. Himler,* 797 F.2d 156, 161 (3d Cir.1986); *United States v. Liebowitz,* 652 F.Supp. 591, 596 (N.D.Ind.1987). With respect to the government's contention that the defendant poses an unacceptable risk to the community's safety, however, the government must prove its allegations by clear and convincing evidence. 18 U.S.C. § 3142(f); *United States v. Salerno,* 481 U.S. 739, 742, 107 S.Ct. 2095, 2098, 95 L.Ed.2d 697 (1987).

 Detention can be based on a showing either of dangerousness or risk of flight. Both are not required. *United States v. Fortna,* 769 F.2d 243, 249 (5th Cir.1985). Clear and convincing evidence is something more than proof by a preponderance of the evidence but less than proof beyond a reasonable doubt. *Addington v. Texas,* 441 U.S. 418, 425, 99 S.Ct. 1804, 1808, 60 L.Ed.2d 323 (1979). The standard is "reasonable assurance"; the court cannot order detention because there are no conditions which would guarantee appearance and safety. *United States v. Orta,* 760 F.2d 887, 891–92 (8th Cir.1985).

The factors to be considered in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community fit into four general categories and take into account the available information concerning—(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including—(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under federal, state, or local law; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

 Subject to rebuttal by the defendant, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act. 18 U.S.C. § 3142(e). This rebuttable presumption arises only if the defendant is charged in at least one count subject to these penalties. *United States v. Chimurenga,* 760 F.2d 400, 403–04 (2d Cir.1985).

 The rebuttable presumption of § 3142(e) creates a burden of production upon the defendant, not a burden of persuasion. The purpose of the rebuttable presumption is to shift the burden to the defendant to establish a basis for concluding that there are no conditions of release sufficient to reasonably assure that the defendant will not engage in dangerous criminal activity pending trial. The Seventh Circuit has adopted the reasoning of the First Circuit in *United States v. Jessup,* 757 F.2d 378, 381 (1st Cir.1985). *See Dominguez,* 783 F.2d at 707; *United States v. Diaz,* 777 F.2d 1236, 1237 (7th Cir.1985). Although most rebuttable presumptions found in the law disappear when any evidence is presented by the opponent of the presumption, the rebuttable pre-

sumption of Section 3142(e) is not such a "bursting bubble". *Jessup,* 757 F.2d at 383. Thus in order to rebut the presumption, the defendant must produce some evidence; and the judge should still keep in mind the fact that Congress has found that certain drug offenders, as a general rule, pose special risks of flight. *Dominguez,* 783 F.2d at 707; *Diaz* 777 F.2d at 1238; *Jessup,* 757 F.2d at 383.

■ At the time that Magistrate Judge Fiora was presented with the defendant, Jones was charged with controlled substance violations for which the maximum period of incarceration exceeds ten years. The evidence against him was demonstrated to be very strong. The defendant had no ties to the Southern District of Indiana. Jones's drug operation was shown to have a degree of sophistication concerning the federal narcotics laws, and he displayed that knowledge at the time of his brother's arrest by suggesting that he would make no deliveries involving more than 100 kilograms of marijuana per trip. The deliveries were arranged through a complicated code and effectuated through a clever use of a pager system. The defendant apparently had initiated the creation of a false identity in Nevada, one "Skip Gallant." He also had utilized multiple Social Security numbers, and driver's licenses from three different states at various recent times.

This court also notes the close vicinity of Jones's residence, Tucson, to the Mexico border. The difficulty of extra-territorial removal from the country of Mexico causes the court to have concern for potential problem and risk of flight. This is especially true when consideration is given to the defendant's conduct when law enforcement officials arrived at the defendant's home to arrest him.

Given the serious nature of the charges, the evidence disclosed a long-standing conspiracy with large amounts of high grade marijuana and with large amounts of money, there is a strong likelihood of the continuation of illegal enterprise. The defendant did not rebut the presumption. These factors coupled with the defendant's position in the criminal conspiracy charged in the complaint made him a danger to the community and a serious risk of flight.

This Court has examined the factors found in 18 U.S.C. § 3142(g) and weighed the evidence according to the standards noted above. Pursuant to the evidence and the rebuttable presumption of § 3142(e), the Court finds by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community upon the defendant's release. Further, the Court finds by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of the defendant as required for the resolution of this criminal case.

Accordingly, this court respectfully disagrees with the conclusions of Magistrate Judge Fiora and concludes that at the end of the Arizona hearings, Jones should have been detained. The court's conclusion is not altered even after a consideration of the evidence presented at the Indiana hearing. In fact, the court's resolve in this regard is strengthened.

### INDIANA HEARING

■ As of the time of the hearing before Magistrate Judge Foster in Indiana, the panorama of charges against Jones had been enhanced in a significant way. Count 1 of the indictment charges a conspiracy to possess and distribute marijuana, a Schedule I Non–Narcotic Controlled Substance, in a quantity greater than 1,000 kilograms, in violation of 21 U.S.C. §§ 841(a)(1) and 846, which carry a minimum mandatory term of imprisonment of ten years and a maximum of life imprisonment in the event the defendant has no prior felony conviction. Count 2 of the indictment charges the possession with intent to distribute more than 50 kilograms of marijuana, a Schedule I Non–Narcotic Controlled Substance, in violation of 21 U.S.C. § 841(a)(1), which carries a maximum of 40 years provided the defendant has no prior felony conviction. Count 3 of the indictment charges the possession with intent to distribute more than 50 kilograms of marijuana, a Schedule I Non–Narcotic Controlled

Substance, in violation of 21 U.S.C. § 841(a)(1), which carries a maximum term of imprisonment of 20 years provided the defendant has no prior felony conviction.

Of course, Magistrate Judge Fiora was told that an indictment involving a 1,000 kilogram plus conspiracy charge would be sought, but the government's assertion that it would seek that indictment pales in comparison with the grand jury's return of such an ominous charge. Nonetheless, the charges contained in the indictment again give rise to a rebuttable presumption that no condition or combination of conditions will assure the appearance of the defendant as required or the safety of the community.

Some additional and interesting facts were presented through Agent Alter's further testimony before Magistrate Judge Foster. Specifically, Agent Alter indicated that the utilities at the residence where the defendant was residing at the time of his arrest were in the name of his wife, using her maiden name. He also testified that a Corvette automobile was seized from the home that the defendant's wife claimed belonged to her. However, the car was registered to a third person, not the defendant's wife. Finally, Agent Alter testified that the defendant fit the description of the person who had obtained the "Skip Gallant" license and credit history in Nevada, and that the defendant's brother William Scott Jones did not. In all other respects, Agent Alter's testimony reiterated the facts he presented to Magistrate Judge Fiora.

Magistrate Judge Foster also made his own observations that the defendant and his brother, William Scott Jones, did not have a similar appearance. Magistrate Judge Foster was in a position to make that comparison because he had seen both men when they had passed through his court, at different times, on serious drug charges in 1992.

Thus, the detention that should have been ordered in Arizona should continue even after a consideration of the additional Indiana evidence.

If the vehicle by which the matter came before the federal courts in Indiana is of significance, the evidence reviewed above is sufficiently material to allow the court to reopen the detention/release question. 18 U.S.C. § 3142(f). Moreover, this court is convinced that the government's Motion for Order of Pretrial Detention, filed in this court on September 9, 1992, can be construed as a motion for revocation or amendment of the Arizona Magistrate Judge's order under 18 U.S.C. § 3145(a). *See United States v. Shaker,* 665 F.Supp. 698, 700–01 (N.D.Ind.1987). Besides, this court (and Magistrate Judge Foster through the authority of this court and the Local Rules) can *sua sponte* review the Arizona Magistrate Judge's order and amend the conditions of release as the court of original jurisdiction over the offense. *See United States v. Spilotro,* 786 F.2d 808, 815 (8th Cir.1986); *United States v. Acheson,* 672 F.Supp. 577, 579 (D.N.H. 1987). The court finds no prohibition in the Bail Reform Act to successive petitions, and clearly invites them when additional facts are learned.

Without question, the Act recognizes a "local" interest in the originating jurisdiction which may be different than the interests of the jurisdiction in which the arrest occurs. This is reflected in the existence of § 3145(a), which allows the originating court to review a "foreign" release decision without requiring the production of new evidence, in contrast to § 3142(f). In any event, the appropriate standard of review to be applied in the district court to any review of a detention/release order is a *de novo* review.

In the final analysis, the defendant should continue to be detained while awaiting trial, regardless of whether this is a review of either Magistrate Judge's prior ruling or a brand new consideration for this court. An order will be issued in conjunction with this entry. The defendant's Petition for Review is GRANTED, and following that review, the defendant remains DETAINED.