**UNITED STATES of America**

v.

**Joe JOHNSON.**

**Crim. No. 2:94 Cr 53 (31).**

United States District Court, N.D. Indiana, Hammond Division.

July 12, 1994.

Ronald J. Kurpiers, III, Asst. U.S. Atty., Dyer, IN, for plaintiff.

Richard James, Luke Casson, Dyer, IN, for defendant.

## ORDER

RODOVICH, United States Magistrate Judge.

This matter is before the court on the government's request to detain the defendant, Joe Johnson, made at the June 28, 1994 initial appearance. For the reasons set forth below, the motion is **GRANTED.**

### Background

On June 2, 1994, the grand jury returned a 21 count indictment against the defendant, Joe Johnson, and 39 other individuals. When the indictment was returned, Johnson was living in Richfield, Minnesota.

The pending indictment was not Johnson's first encounter with federal authorities. On February 1, 1994, Johnson was charged in the United States District Court, District of Minnesota, with possession with intent to distribute cocaine. That charge was initiated by a one count criminal complaint. On February 4, 1994, Johnson was released on a $20,000 unsecured bond.

On June 20, 1994, Johnson made an initial appearance before Magistrate Judge J. Earl Cudd for the charges contained in the indictment. Pursuant to 18 U.S.C. § 3142(e), the government requested that Johnson be held without bond pending trial. Since Johnson was represented by an attorney at the initial appearance, the detention hearing was conducted immediately.

The government called two witnesses at the detention hearing. The first witness was DEA Agent Phil Pedersen. Agent Pedersen testified that in preparation for the detention hearing he had a telephone conversation with DEA Agent Victor Jasevicius, the case agent

in charge of the investigation. Agent Pedersen then testified:

Q. Did you ask the Special Agent in Indiana for any detail at his disposal as to the grounds to [sic] detention?

A. Yes, I did.

Q. And what did he tell you?

A. He indicated to me that Mr. Johnson was indicted in a conspiracy involving 50 kilograms of cocaine.

Q. Did he provide you with any more information than that?

A. No, sir, he did not.

Detention hearing transcript pp. 3–4

That concluded the direct examination of Agent Pedersen.

The government next called John Culhane, a St. Paul police officer assigned to the federal task force. Officer Culhane testified that Johnson had provided information to federal agents conducting narcotics investigations in both Minnesota and Indiana. Officer Culhane indicated that the information provided by Johnson was corroborated through other sources. However, Officer Culhane testified that Johnson was arrested on May 5, 1994, by Minneapolis police officers after a short chase. A search of his vehicle revealed that Johnson was in possession of two ounces of cocaine. Johnson gave a statement admitting that he had purchased the cocaine in Georgia. Officer Culhane testified that this purchase was not done with the knowledge and approval of officers assigned to the investigation.

After hearing arguments from both counsel, Judge Cudd denied the government's motion to detain Johnson. Judge Cudd did not make any findings from the bench, nor did he issue an order stating the reasons for his decision. Johnson was released on an unsecured bond and ordered to appear before this court on June 28, 1994.

On June 21, 1994, the government filed a Petition for Review of Release Order pursuant to 18 U.S.C. § 3145(a). That petition was directed to this court, not the district judge assigned to the case.

Johnson made his first judicial appearance in this district as scheduled on June 28. At that hearing, the government requested that Johnson be detained. Johnson was taken into custody, and a detention hearing was scheduled for July 1, 1994.

At the July 1 hearing, Johnson's attorney raised procedural objections to his detention. First, Johnson claimed that the June 28 detention request was untimely since Section 3142(e) does not discuss successive detention requests. Second, Johnson claimed that only the district judge could review Judge Cudd's order under Section 3145(a). Since neither attorney had appeared at the Minnesota detention hearing and no transcript was available, the detention hearing was continued until July 7, 1994. Johnson was ordered to file a transcript of the Minnesota hearing prior to the July 7 detention hearing.

At the July 7 detention hearing, the government called Agent Jasevicius as a witness. Over the defendant's objection, Agent Jasevicius was permitted to testify concerning his entire investigation into Johnson's narcotics activities. On cross-examination, Agent Jasevicius admitted that virtually all of his testimony related to evidence accumulated against Johnson prior to June 20, 1994. Although Agent Jasevicius acquired a new confidential informant after the June 20 hearing, he indicated that most of the information provided by the confidential informant merely corroborated other evidence obtained during the investigation. The new information obtained from the confidential informant and disclosed at the July 7 hearing related to relatively minor matters.

### Discussion

This case has raised several interesting issues under the 1984 Bail Reform Act. As a practical matter, most detention hearings are fact sensitive and are conducted in a summary fashion. As a result, there are few district court or appellate court decisions interpreting the bond statute. So the issues raised in this case must be resolved with little guidance from other courts.

■ The first issue is whether a magistrate judge in the charging district may review an order denying detention issued by

another magistrate judge in the arresting district. Section 3145(a) provides:

If a person is ordered released by a magistrate, or by a person other than a judge of the court having original jurisdiction over the offense and other than a Federal appellate court—

(1) the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release; and

(2) the person may file, with the court having original jurisdiction over the offense, a motion for amendment of the conditions of release.

The motion shall be determined promptly.

It is clear from the wording of Section 3145(a) that "a court having original jurisdiction over the offense" must be interpreted as the district judge assigned to the case. Although Section 3145(a) does not distinguish between a magistrate judge in the arresting district and a magistrate judge in the charging district, that section suggests a hierarchy for reviewing a magistrate's decision. In other words, Section 3145(a) authorizes a district judge to review a decision made by a magistrate judge, but it does not confer the same authority upon a magistrate judge in the charging district when the challenged order was issued by a magistrate judge in the arresting district. Since the petition filed by the government on June 21 was directed to this court, it was not the correct procedure for seeking review of Judge Cudd's order.

█ When Johnson made his first appearance before a judicial officer in this district, the government requested that he be detained. Johnson now challenges the timeliness of this request. In *United States v. Dominguez,* 783 F.2d 702 (7th Cir.1986), the defendant was arrested outside of the charging district. At the initial appearance in the arresting district, the government did not request detention. When the defendant made his initial appearance in the charging district, the government asked that he be held without bond. Over the defendant's objection, it was determined that the request was timely. After conducting a detention hearing, the magistrate judge detained the defendant. On appeal, the defendant raised both procedural and substantive challenges to his detention. The Court of Appeals held that the detention request was timely and stated:

To require the government (or the court, *see* § 3142(f)(2)) to decide whether to seek detention when a defendant first appears in a noncharging district places the decision in the hands of persons who are not only less concerned about the ultimate proceedings but also, more importantly, much less likely to have the knowledge of the defendant and of the charges against him that is required to make an informed decision on whether detention is appropriate. . . .

. . . Nor do we believe that a prosecutor or court in a charging district must be foreclosed from pursuing pretrial detention because officials in the arresting district decline to detain a defendant in the absence of full information. In some cases, of course, circumstances may make it appropriate to request detention in the arresting district. Nevertheless we believe that the most informed decisions will almost always be made in the charging district by prosecutors that have supervised the investigation and by courts that will supervise the remaining proceedings. Those officials should always have the option of seeking detention within the statute's limits and according to its procedures.

783 F.2d at 704–05

The Court of Appeals concluded that in evaluating all of the relevant factors, the "best assessment . . . will most assuredly be available in the charging district." 783 F.2d at 705

The Supreme Court also has addressed pretrial detention under Section 3142(f). In *United States v. Montalvo–Murillo,* 495 U.S. 711, 110 S.Ct. 2072, 109 L.Ed.2d 720 (1990), a detention hearing was not conducted within the three day time limit provided in Section 3142(f). Although the district court believed that the facts supported detention, it ordered the defendant released for the procedural violation. The court of appeals affirmed the

district court, but the Supreme Court reversed and stated:

> Nothing in § 3142(f) indicates that compliance with the first appearance requirement is a precondition to holding the hearing or that failure to comply with the requirement renders such a hearing a nullity. It is conceivable that some combination of procedural irregularities could render a detention hearing so flawed that it would not constitute "a hearing pursuant to the provisions of subsection (f)" for purposes of § 3142(e). A failure to comply with the first appearance requirement, however, does not so subvert the procedural scheme of § 3142(f) as to invalidate the hearing. The contrary interpretation—that noncompliance with the time provisions in § 3142(f) requires the release even of a person who presumptively should be detained under § 3142(e)—would defeat the purpose of the [Bail Reform] Act.

495 U.S. at 717, 110 S.Ct. at 2077

The Supreme Court concluded:

> Our conclusion is consistent with the design and function of the statute. We have sustained the Bail Reform Act of 1984 as an appropriate regulatory device to assure the safety of persons in the community and to protect against the risk of flight. We have upheld the substantive right to detain based upon the Government's meeting the burden required by the statute. *United States v. Salerno,* 481 U.S. 739 [107 S.Ct. 2095, 95 L.Ed.2d 697] (1987). Automatic release contravenes the object of the statute, to provide fair bail procedures while protecting the safety of the public and assuring the appearance at trial of defendants found likely to flee. The end of exacting compliance with the letter of § 3142(f) cannot justify the means of exposing the public to an increased likelihood of violent crime by persons on bail, an evil the statute aims to prevent.... The Government's interest in preventing these harms remains real and substantial even when the time limits have been ignored. The safety of society does not become forfeit to the accident of noncompliance with statutory time limits where the Government is ready and able to come forward with the requisite showing to meet the burden of proof required by the statute.

495 U.S. at 719–20, 110 S.Ct. at 2078–79

In short, the Supreme Court declined to elevate form over substance.

*United States v. Jones,* 804 F.Supp. 1081 (S.D.Ind.1992) is factually similar to the pending case. In *Jones,* the defendant was arrested in Arizona based upon a warrant issued out of the Southern District of Indiana. At the Arizona initial appearance, the government requested that Jones be held without bond. The magistrate judge denied that request, but Jones was unable to post the required cash bond. When Jones made his initial appearance in Indiana, the government again requested that he be detained. That request was granted by the magistrate judge. Pursuant to Section 3145(a), the district judge reviewed the decisions of both magistrate judges. After holding that the facts supported detention, the district court stated that there was "no prohibition in the Bail Reform Act to successive petitions, and [it] clearly invites them when additional facts are learned." 804 F.Supp. at 1090. In reaching this decision, the district court relied upon Section 3142(f) which provides in part:

> The hearing may be reopened before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person in the community.

One final procedural point must be addressed. Johnson argues that when the government seeks to introduce additional evidence under Section 3142(f), the government must show that the evidence was not available to *any* government agent at the time of the first detention hearing. In other words, Johnson contends that the knowledge of case agent Jasevicius must be imputed to the assistant U.S. Attorney and any agents involved in the Minnesota proceedings. However, the *Dominguez* court declined to view

the government as one omniscient entity. In permitting the government to seek detention of Dominguez when he made his first appearance in the charging district, the Court of Appeals relied upon the fact that "the most informed decisions will almost always be made in the charging district by prosecutors who have supervised the investigation ..." 783 F.2d at 705. Therefore, the knowledge of the federal agents in Indiana will not be imputed to the attorney or agents representing the government in the Minnesota proceedings.

### Evidence Offered at the July 7 Detention Hearing

■ Agent Jasevicius is the case agent for a narcotics investigation which lasted 26 months. During the course of the investigation, DEA agents relied upon wire taps, confidential informants, and surveillance. The investigation originally targeted the narcotics network operated by Michael Jones in Gary, Indiana. During the course of the investigation, DEA agents obtained information concerning the suppliers of Jones. In Count 4 of the indictment, it is alleged that Jones and others distributed in excess of 500 kilograms of cocaine between July, 1993 and May, 1994.

In January, 1994, Jones provided Johnson with approximately ten kilograms of cocaine to distribute in Minneapolis, Minnesota. Johnson and another individual, Rodney Pruitt, transported the cocaine to Minnesota. However, Johnson and Pruitt were arrested, and the cocaine was confiscated by local authorities.

Agent Jasevicius testified to a series of wire tapped telephone conversations involving Jones and other individuals. During these conversations, Jones indicated that he believed that Johnson was cooperating with the authorities in Minnesota and he advised his confederates to avoid Johnson.

Johnson called Jones on February 12, 1994, and indicated that he believed that Pruitt had stolen the cocaine. Johnson called Jones again on February 13, 1994, and indicated that he was facing 15 years imprisonment since guns were seized along with the cocaine. In the second telephone conversation, Johnson told Jones that he would make installment payments to cover the confiscated cocaine.

In Count 2 of the indictment, Johnson is charged with being a member of a conspiracy which distributed in excess of 100 kilograms of cocaine between July 1, 1991 and the Spring of 1992. According to Agent Jasevicius, the conspiracy did not end in 1992. In 1993 and 1994, Johnson received in excess of 30 kilograms of cocaine from other members of the conspiracy.

On April 26, 1994, Johnson went to Atlanta, Georgia with Jones and other members of the conspiracy. According to a confidential informant, Johnson traded a Rolex watch for one-half kilogram of cocaine and $2,000 during this trip. As previously stated, Johnson was arrested in Minnesota on May 5, 1994. At the time of his arrest, he was in possession of two ounces of cocaine which he admitted purchasing in Georgia.

As discussed previously, Johnson was released on a $20,000 unsecured bond on February 4, 1994. According to the Probation Department, Johnson tested positive for cocaine on February 7, 1994 and May 2, 1994.

Finally, Johnson has an extensive criminal record. He has been arrested in Bloomington, Indiana, Michigan City, Indiana, and Hennepin, Minnesota. On May 28, 1991, Johnson was convicted of confinement, a felony, and placed on two years probation in Bloomington. On February 19, 1993, Johnson was convicted of conversion and placed on probation for six months in Michigan City.

### Reasons Justifying Detention

■ Under 18 U.S.C. § 3142(e), a rebuttable presumption exists that a defendant is a danger to the community if he is charged with a narcotics offense and faces a maximum sentence in excess of ten years. Johnson faces a mandatory minimum sentence of ten years imprisonment and a maximum sentence of life imprisonment. A defendant who is involved in the distribution of large quantities of narcotics poses a continuing danger to the community. *United States v. Cervantes*, 951 F.2d 859, 861 (7th Cir.1992); *United States v. Ramirez*, 843 F.2d 256, 258 (7th Cir.1988); and *United. States v. Manso–*

*Portes,* 838 F.2d 889, 890 (7th Cir.1988). Once a narcotics conspiracy has been demonstrated, it is presumed that the conspiracy is an ongoing and continuous activity. *United States v. McNeese,* 901 F.2d 585, 596–97 (7th Cir.1990).

The government has demonstrated by clear and convincing evidence that Johnson is a danger to the community. Michael Jones was the head of a large narcotics network operating in Gary, Indiana. The Jones network allegedly distributed in excess of 500 kilograms of cocaine. Johnson dealt directly with Jones and travelled to Minneapolis, Minnesota, to expand the Jones narcotics network. Johnson continued to possess and use cocaine even after he was placed on bond on February 4, 1994. Based upon his prior record, his bond violations, and his access to large quantities of cocaine, Johnson must be considered a danger to the community.

Although the government did not present any specific evidence concerning threats to potential witnesses, the danger of witness intimidation also must be considered in a conspiracy of this magnitude. During its investigation, the government obtained evidence from more than one confidential informant. When the government makes the required disclosure of wire tap transcripts and other evidence, the identity of the confidential informants may be revealed. Conspirators who deal in multi-kilogram quantities of cocaine have financial and other resources available to them which may pose a substantial risk to potential witnesses.

The government's motion for pretrial detention is **GRANTED,** and the defendant is **ORDERED HELD WITHOUT BOND.** 18 U.S.C. § 3142(e).

Pursuant to 18 U.S.C. § 3142(i), it is further ORDERED that:

A.  The defendant shall be committed to the custody of the Attorney General for confinement to a corrections facility separate, to the extent practicable, from persons who are confined after a conviction;

B.  The defendant shall be afforded reasonable opportunities for private consultation with his attorney; and

C.  The defendant shall be delivered to the custody of the United States Marshal when the appearance of the defendant for any court proceeding is required.

ENTERED.