UNITED STATES of America, Plaintiff,

v.

Alfred S. CALABRESE, Jr., Defendant.

No. 1:95 CR 281.

United States District Court,
N.D. Ohio,
Eastern Division.

Sept. 6, 1995.

Joseph Anthony Delguyd, Cleveland, OH, for Joseph J. Iacobacci, Jr.

Joseph J. Iacobacci, Jr., Wikliffe, OH, Pro Se.

Gary W. Eisner, Law Offices Of Gary W. Eisner, Parma, OH, for Alfred S. Calabrese, Jr.

Alfred S. Calabrese, Jr., Richmond Heights, OH, Pro Se.

Phillip J. Campanella, Calfee, Halter & Griswold, Cleveland, OH, Charles Fleming, Jr., Office Of The Federal Public Defender, Cleveland, OH, for Samuel J. Feinberg.

Samuel J. Feinberg, Cleveland, OH, Pro Se.

Mark A. Stanton, Short, Shepherd & Stanton, Hoyt Block, Cleveland, OH, for Robert P. Quinn.

Robert P. Quinn, Cleveland, OH, Pro Se.

Stephen G. Sozio, Office Of The U.S. Attorney, Cleveland, OH, for the U.S.

## ORDER

DOWD, District Judge.

The defendant was indicted on July 28, 1995 along with three other defendants for conspiracy to commit offenses against the United States in violation of 18 U.S.C. § 371. The defendant was arrested and arraigned. The government has moved for an order of detention of the defendant. The court conducted a hearing on August 24, 1995 in response to the government's motion. The government presented the testimony of FBI special agent David Drab who offered testimony in support of the government's position that the defendant was a danger to the community. The parties have submitted post-hearing briefs. (See Dockets 23 & 24).

■ Pretrial detention under the provisions of 18 U.S.C. Section 3142 is available on alternative grounds. The first is that no condition or combination of conditions will reasonably assure the appearance of the de-

fendant, and the second ground is that no condition or combination of conditions will reasonably assure the safety of any other person and the community. In this case, the defendant is on federal parole and subject to a warrant issued by the Parole Commission for parole violations. Consequently, the government's motion for detention is limited to the second ground. Its case for detention rests on the proposition that the defendant is a LCN (La Costra Nosta) associate; that he is a violent man committed to the restoration of the LCN as a power in the Cleveland area by violent means if appropriate (see FBI Agent Drab's testimony—Docket 26), and the provisions of 18 U.S.C. § 3142(f) which provide in part as follows:

> (f) **Detention hearing.** The judicial officer shall hold a hearing to determine whether any condition or combination of conditions set forth in subsection (c) of this section will reasonably assure the appearance of the person as required and the safety of any other person and the community—
>
>> (1) upon motion of the attorney for the government in the case that involves—
>>
>> (D) any felony if the person has been convicted of two or more offenses described in subparagraphs (A) through (C) of this paragraph ...

In sum, 18 U.S.C. § 3142(f)(1)(D) and the defendant's criminal history are advanced as the predicate for the government's motion for an order of detention. 18 U.S.C. § 3142(g) sets forth the factors to be considered by the judicial officer in determining whether there are conditions of release that will reasonably assure the safety of any other person in the community. Specifically, in this case, the provisions of 18 U.S.C. §§ 3142(g)(3)(A) and (B) and (4) apply.

The defendant's criminal record is extensive.[1] It includes convictions for armed bank robbery, which is a crime of violence, and a conviction for conspiracy and distribution of cocaine, which is a controlled substance violation with a maximum term of imprisonment of 10 years or more. Consequently, the defendant is subject to an order of detention pursuant to 18 U.S.C. § 3142(f)(1)(D).

On the issue of whether the defendant is a danger to the safety of any other person and the community, the testimony of FBI agent Drab is compelling.[2] Moreover, the defendant is presently on federal parole. On the other hand, consistent with the issue of defendant's family ties, length of residence in the community and community ties, all factors to be considered, it is apparent that the defendant, while not incarcerated, has been a life-long resident in the Cleveland area. He is presently married to his second wife and maintains contact with his three children from his first marriage and had been regularly employed for the two years preceding his arrest on the indictment in this case.

■ *United States v. Salerno*, 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) teaches that pretrial detention on the basis of "future dangerousness" does not violate the constitution.

In this case, the lengthy criminal record of the defendant, combined with the unrebutted

---

**1.** The defendant was convicted in Ohio in 1962 in a state court proceeding for burglary in the night season. In 1964 he was convicted of breaking and entering and larceny in a Maryland state court. In 1968 the defendant was convicted of armed bank robbery in United States District Court in Cleveland, Ohio. In 1976 the defendant was convicted of assault in a state court in Ohio. In 1981 the defendant was convicted of DUI in Cleveland, Ohio. In 1984 the defendant was convicted, in the United States District Court for the Southern District of New York, of conspiracy to distribute cocaine and carrying a firearm during the commission of a crime. He received a 15 year sentence and was paroled on July 21, 1992. He remains on parole.

**2.** Drab's testimony was based on a review of recorded telephone conversations between Cala-

brese and codefendants and others while Calabrese was incarcerated at the federal penitentiary in Milan, Michigan until May, 1992; the FBI's surveillance of Calabrese upon his release from prison; an additional 59 recorded conversations between Calabrese and a cooperating witness, Weisenbock, which occurred after Calabrese's release from prison through April, 1994, as well as information provided to the FBI from other witnesses and confidential informants cooperating with the FBI. Drab indicated that Calabrese was attempting to reestablish his role as an LCN enforcer and pointed to the fact that Calabrese, in recorded conversation, indicated that he "pistol whipped" an individual in his role as the tough guy. See Drab testimony, pg. 16.

testimony of Agent Drab, leads the Court to find that the defendant represents a threat to the safety of the community.

■ However, the Court has the obligation to consider whether any conditions or combination of conditions will reasonably assure the safety of any other person and the community even where the court finds that the defendant poses a threat to the safety of the community. *United States v. Dominguez*, 783 F.2d 702, 706–707 (7th Cir.1986).

18 U.S.C. § 3142(f) directs that "the facts the judicial officer uses to support a finding pursuant to subsection (e) that no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by *clear and convincing evidence.*" (emphasis added)

The government cites *United States v. Tortora*, 922 F.2d 880 (1st Cir.1990) for the proposition that a defendant, while on parole and connected to the LCN, "is precisely the type of defendant Congress had in mind when it wrote of the 'small but identifiable group of particularly dangerous defendants as to whom neither the imposition of stringent release conditions nor the prospect of revocation of release can reasonably assure the safety of the community or other persons.'" 922 F.2d at 886.

The defendant has proposed a set of restrictions which include house arrest complete with electronic monitoring, no visitation rights except for immediate family and his lawyer. Additionally, the defendant is agreeable to electronic surveillance of all telephone communications except with his lawyer. The government opposes such a set of restrictions arguing that they are not sufficient to protect the community.

In *Tortora*, the district court imposed a series of restrictions in lieu of an order of detention that the government successfully challenged on appeal. The restrictions included:

> (1) remain at home twenty-four hours a day, except for a reasonable number of visits to doctors and lawyers, wearing an electronic bracelet; (2) refrain from communicating with any person not approved by the prosecutor and defense counsel; (3)

meet with codefendants only in the presence of counsel for the purpose of preparing a defense; (4) allow only one telephone line into his residence, hooking it up to a pen register; and (5) post the residence—a house owned by his brother (who, apparently, agreed to execute the necessary documents)—as security.

In reversing the district court and ordering the defendant's detention, Judge Selya, writing on behalf of the First Circuit observed:

> We have listed the salient conditions, *supra,* p. 882, and it would be pleonastic to recite them anew. They are admittedly elaborate and extensive. But they have an Achilles' heel: if there is a unifying theme in this intricate set of restrictions, it is that virtually all of them hinge on the defendant's good faith compliance. To illustrate, electronic monitoring, while valuable in pretrial release cases (especially in allowing early detection of possible flight), cannot be expected to prevent a defendant from committing crimes or deter him from participating in felonious activity within the monitoring radius. Second, by allowing outside visits to doctors and lawyers, the conditions open up a sizeable loophole; there is no feasible way of assuring that Tortora, while en route to and from such appointments, will not make stops and take detours with a view toward continuing his criminal life. House arrest poses much the same problem; limiting visitors can only work, for example, if the appellee submits the names of potential guests for clearance. The only enforcement mechanism provided to ensure that Tortora properly restricts his contacts is a requirement that Tortora keep a record of those contacts—a mechanism which, itself, is honor-dependent. Finally, the monitoring of Tortora's sole telephone line can be easily evaded by, say, the surreptitious introduction into his home of a cellular telephone or stopping at a pay telephone while headed for an authorized appointment.

> *Consequently, we find that the conditions as a whole are flawed in that their success depends largely on the defendant's good faith—or lack of it.* They can be too

**290**

easily circumvented or manipulated. Such a flaw takes on great significance where, as in this case, little about the defendant or his history suggests that good faith will be forthcoming. If past is prologue, then promises to hew the straight and narrow will mean next to nothing to this defendant. In our estimation, the conditions fail to offer an objectively reasonable assurance of safety to the community.

At oral argument, it was hinted that, if dubiety reigned, we could simply tighten the vise by amending the conditions of release. We think such a course impracticable here.

(Footnote omitted; emphasis added).

### CONCLUSION

The Court finds the reasoning in *Tortora* convincing in wrestling with the issue as to whether a combination of conditions controlling the release of the defendant would reasonably assure the safety of any other person and the community.

The court finds the evidence persuasive that the defendant is committed to a life of crime and is quick to resort to violence to accommodate his criminal pursuits. Consequently, and in reliance upon the reasoning in *Tortora*, the Court declares that the evidence is clear and convincing that no combination of conditions regarding the release of the defendant will reasonably assure the safety of any other person and the community. The government's motion for detention is GRANTED.

IT IS SO ORDERED.